No. 39,292

MARY ANN GRAHAM, *Appellee,* v. BOTTENFIELD'S, INC., a Corporation, *Appellant.*

(269 P. 2d 413)

Opinion filed April 10, 1954.

*P. E. Nulton,* of Pittsburg, argued the cause, and *R. L. Letton,* of Pittsburg, was with him on the briefs for the appellant.

*Pete Farabi,* of Pittsburg, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover for injuries alleged to have been sustained from the use of a hair preparation, known as "Miss Clairol." The defendant appeals from an order overruling its demurrer to the petition.

Failure of the petition to state facts sufficient to constitute a cause of action is the sole issue involved on appeal. For that reason, because it discloses the factual situation, about as clearly as it could be described in narrative form, and definitely outlines the legal theory on which plaintiff bases her right to relief, we shall quote from such pleading at length, omitting only formal averments and other immaterial allegations to which brief reference will be made.

After stating plaintiff is a resident of Pittsburg, that the defendant Bottenfield's, Inc., is a Kansas corporation, engaged in the business of wholesaling, distributing and selling beauty and barber supplies in Crawford county, and that the defendant Clairol Inc., is a foreign corporation, located at Stamford, Conn., and engaged in the business

of selling the involved hair preparation in the state of Kansas without authority of law, the petition reads:

"Plaintiff further states that said defendant Clairol Inc., a corporation, did prior to February 2, 1951, sell said 'Miss Clairol' preparation to the defendant Bottenfield's Inc., a corporation, knowing that said Bottenfield's Inc., a corporation, would offer said 'Miss Clairol' hair preparation for sale to the beauty shops and parlors in their trade territory for use as a hair tint or dye on patrons of said beauty shops in their trade territory, and said defendant Clairol Inc., a corporation, did impliedly warrant that said 'Miss Clairol' hair tint, or dye, or hair color bath preparation was fit for the purpose of applying the same to the hair and scalp of patrons of beauty shops or the public in general and did impliedly warrant that the same could be used without injury to said patron or the public.

"Plaintiff further states that at the time prior to February 9, 1951, the defendant, Bottenfield's Inc., a corporation, did sell said product above described to-wit: 'Miss Clairol' to one Mrs. Pearl Baker, owner of the Vanity Beauty Shoppe, 125 East Fourth Street, Pittsburg, Kansas, knowing that said Pearl Baker would use said 'Miss Clairol' preparation herein described on the hair and scalp of patrons of her beauty shop and said defendant Bottenfield's Inc., a corporation, did impliedly warrant that said hair preparation above described to-wit: 'Miss Clairol' was fit for the purpose of using the same on the hair and scalp of the patrons of said beauty shops and the public as a hair dye, or tint, or color bath and that the same would not cause any personal injury of any nature to the patrons and public as a whole.

"Plaintiff further states that thereafter and on the second day of February, 1951, she, for valuable consideration, took a hair treatment at the beauty shop of the said Pearl Baker, at the Vanity Beauty Shoppe, owned by the said Pearl Baker, said hair treatment being administered by the said Pearl Baker and that the said Pearl Baker did use the hair preparation dye, tint, or color bath above mentioned to-wit: 'Miss Clairol', and that said plaintiff underwent said hair treatment relying upon said implied warranty above described. Plaintiff states that said hair preparation or hair dye, or hair tint, or hair color bath, to-wit: 'Miss Clairol' was not fit for use as such, but contained deleterious and harmful substances the exact nature of which the plaintiff cannot and does not know as the same are peculiarly within the knowledge of the defendants, and by reason thereof and the defendants' breach of warranty of fitness and wholesomeness of said hair preparation above mentioned to-wit: 'Miss Clairol, the plaintiff was injured and damaged in the following manner to-wit:

(Here follows a full and complete statement of all injuries alleged to have resulted from the use of such hair preparation.)

"Plaintiff further states that when the defendant Clairol Inc., a corporation, sold said 'Miss Clairol' hair preparation to the defendant Bottenfield's Inc., a corporation, the said defendant Clairol Inc., a corporation, knew that said hair preparation above described would be resold by the said Bottenfield's Inc., a corporation, to beauty shops or other trade outlets to be used on the hair and scalp of the public, and the defendant Clairol Inc., a corporation, impliedly warranted to all persons who might use said hair preparation or have the same used on them by approved beauticians, including the plaintiff, that

said 'Miss Clairol' was fit for that purpose and was wholesome and non-injurious to the person and did not contain any harmful substances.

"Plaintiff further states that when the defendant Bottenfield's Inc., a corporation, sold said 'Miss Clairol' hair preparation, dye, tint, or color bath to said Pearl Baker, owner of the Vanity Beauty Shoppe, the defendant Bottenfield's Inc., a corporation, knew that said 'Miss Clairol' would be used by said Mrs. Baker on the hair and scalp of patrons of her beauty shop and the defendant Bottenfield's Inc., a corporation, impliedly warranted to all persons who might use said 'Miss Clairol' or have the same used upon them, including the plaintiff, that said 'Miss Clairol' was fit for such use and was wholesome, not injurious to the person and did not contain any harmful substances."

The remainder of the petition consists of allegations relating to the amount of damages sustained as a result of plaintiff's alleged injuries and a prayer for judgment in accord therewith.

For purposes of supplementing the factual picture only it should be noted at this point that the owner of the beauty shop (Mrs. Pearl Baker), was not made a party, that a pretended service of summons on the manufacturer (Clairol, Inc.) was set aside, and that the only defendant now involved in the action is the distributor (Bottenfield's, Inc.) who sold the product in question to the beauty shop owner.

From an examination of the foregoing petition it is clear that appellee's cause of action is predicated upon the breach of an implied warranty on the part of the manufacturer, the distributor, and for that matter the owner of the beauty shop even though she was not made a party to the action, that "Miss Clairol" when manufactured, when sold, and when subsequently used was suited and fit for use as a hair preparation and contained no deleterious or harmful substances making it unwholesome or injurious to her when applied to her hair and scalp by a beautician.

Appellee states, and we find nothing in our reports to the contrary, that so far as it relates to the sufficiency of a petition in charging a cause of action for breach of implied warranty in the manufacture and sale of a product of the particular type here involved, this is a case of first impression in this court. This, we may add, is true notwithstanding our decision in *Frier v. Proctor & Gamble Distributing Co.*, 173 Kan. 733, 252 P. 2d 850, on which appellant, with some justification, seeks to place weight as a precedent. Resort to that opinion discloses there was no claim the petition failed to state a cause of action, that the cause proceeded to trial, and that at the close of plaintiff's evidence the court took the case away from the jury, after a demurrer had been lodged against the plaintiff's

evidence, and rendered judgment for the defendant principally, if not entirely, upon the premise that under the conditions and circumstances there involved the plaintiff's continued use of the product made her guilty of contributory negligence which precluded her recovery as a matter of law. If, as appellant suggests, the language, to be found in the first portion of the last paragraph commencing on page 735 of the opinion, is susceptible of a construction that the decision is based upon lack of privity between the parties to the action it is to be disregarded. Moreover, in a subsequent decision, in *Nichols v. Nold,* 174 Kan. 613, 621, 258 P. 2d 317, with specific reference to the Frier case, we said "The only point upon which the case can be relied upon as an authority is that under some circumstances the plaintiff in such a case, after all the evidence is in, may be called upon to make an election as to whether he is proceeding upon negligence or contract."

In support of its position the trial court erred in overruling the demurrer to the petition appellant directs our attention, at the outset, to decisions of this court holding that ordinarily there is no privity of contract between the original vendor of personal property and third persons who may purchase or acquire the property from the original vendee; and the original vendor's warranty is a personal obligation between him and his own vendee which does not run with the property like covenants concerning real estate (*Booth v. Scheer,* 105 Kan. 643, 185 Pac. 898; *Lumber Co. v. Mercantile Co.,* 114 Kan. 10, 216 Pac. 815).

We have no quarrel with the rule announced in the foregoing decisions. The difficulty, from appellant's standpoint, is that long ago this court, even when applying such rule, recognized that it was subject to certain exceptions. This is well illustrated in the opinion of the early case of *Lukens v. Freiund,* 27 Kan. 664, where it was said:

"The unquestioned rule of the common law was, *cavet emptor.* As is said by the author in 1 Smith's Leading Cases, p. 242:

" 'The policy of the common law seems to have been to limit the effect of a sale to the transfer of the right of property from the vendor to the purchaser, and to throw the hazards of the purchase upon the latter, unless he had expressly stipulated that they should be borne by the former. No warranty of quality or value was consequently implied from the sale, either of personal or real estate.'

"Upon this recognized policy of the common law, there have been repeated efforts to engraft exceptions, and now it may be conceded that a few have become successfully established. Among them may be mentioned these: Where

an article is ordered from a manufacturer, to be by him manufactured for a special purpose, of which the manufacturer has knowledge, there is an implied warranty that the article when manufactured shall be reasonably fit for such purpose. (*Craver v. Hornburg,* 26 Kas. 94.)

"Again, where goods are sold by sample, there is an implied warranty that the goods when delivered shall correspond in quality with the sample. (*Field v. Kinnear,* 4 Kas. 476; *Bigger v. Bovard,* 20 Kas. 204.) And a third is, where food is sold by a dealer for domestic consumption, there is an implied warranty that it is sound and wholesome. Other exceptions may also exist, but it is unnecessary to mention them." (pp. 666, 667.)

From what has been heretofore stated it becomes obvious our problem in this case is to determine whether the facts pleaded are sufficient to bring it within what, in the light of modern decisions, has come to be regarded as one of the exceptions to the general rule.

This we may add is impliedly, if not expressly, conceded by both parties, the appellant insisting that no exception has application while the over-all contentions advanced by appellee, in support of the trial court's ruling on the demurrer, are that the exception recognized in food cases has been expanded to include products of the type here involved or, if it has not, that under the allegations of the petition logic and sound reason compel a conclusion it should be so extended.

We are not disposed to labor our decisions which recognize the exception and apply the rule that where food is sold by a dealer for domestic consumption there is an implied warranty that it is sound and wholesome. It may be said they are considered and discussed in *Swengel v. F. & E. Wholesale Grocery Co.,* 147 Kan. 555, 77 P. 2d 930, which, we pause to note, is the latest decision in this jurisdiction dealing with that particular question and is therefore the last word on the subject, where it is held:

"In any case where a dealer sells articles of food for immediate human consumption, the purchaser may rely upon an implied warranty that such articles are wholesome and not deleterious, and in the event he sustains injuries from consumption thereof, he may waive any tort there may have been and maintain his cause of action upon such implied warranty.

"Where articles of food for human consumption are manufactured or packed by a manufacturer or packer, and by a series of transactions reach a retail dealer who sells to the consumer, the manufacturer or packer, each intermediate dealer and the retail seller impliedly warrant that such articles of food are wholesome and fit for immediate human consumption.

"The rule of implied warranty of fitness of food for human consumption applies whether the articles of food are sold in bulk or. in sealed packages or containers." (Syl. ¶¶ 1, 2 and 3.)

And in the opinion, with particular reference to the force and effect to be given our previous decisions, said:

"Under these decisions it must be held that in any case where a dealer sells articles of food for immediate human consumption, the purchaser may rely upon an implied warranty that such articles are wholesome and not deleterious, and in the event he sustains injuries from their use, he may waive any tort there may have been and maintain his cause of action upon such implied warranty. We are of the opinion, too, that such warranty is not limited to the immediate seller. While some authorities may be found holding that as between the manufacturer or packer and the ultimate consumer there is no privity of contract, and therefore the injured consumer may not maintain an action, the weight of authority is to the contrary. Assuming that such an action may be maintained, it seems illogical to hold that the injured consumer might maintain an action against the immediate seller or the manufacturer or packer, but not against the intermediate purchaser and sellers of the articles of the food. To so hold would mean that if the immediate seller were financially irresponsible, and the packer, for instances, were located in a foreign country, the injured consumer would, from a practical standpoint, be without remedy. And it might be that by the time the articles were finally sold to a consumer, any right of action he might have against the manufacturer or packer would be barred by the statute of limitations. We think the rule of intermediate liability stated in the Challis case, *supra*, (See the last paragraph on page 222 of its opinion) is that which should be followed.

"On the question that a different rule should be applied as to goods in cans and containers than as to bulk goods, it must be recognized that today practically every article of food except green groceries is packaged in some manner. If putting food in packages is to relieve all intermediate handlers and the immediate seller, then the injured consumer is relegated to his action against the manufacturer or packer. While it is true the purchaser has the same opportunity to inspect, prior to opening the package or container, as his immediate seller or the intermediate handler, he buys, at least in part, relying upon the fact the contents are supposedly wholesome and fit for immediate human consumption. It is also well known that many articles of food are sold by brand or name as the result of extensive advertising, in which purity, wholesomeness, price, etc., are stressed in varying degrees, and that insofar as manufacturers, packers and jobbers are concerned the purpose is to challenge attention to the brand or name and to create a demand therefor. Insofar as the local dealer is concerned, he stocks and sells these advertised goods because of that demand. Although in the case at bar an argument is made that the purchaser, by calling for a particular brand, waived his right to rely on implied warranty, we think it should not be so held. We think that a merchant, in displaying articles of food for sale, impliedly warrants that each and all of the articles are fit, whether of well known or little known brands, or whether packaged or not, and that the fact the purchaser chooses one or the other should not relieve the dealer. And if the dealer is liable, under the circumstances instant in this case, so are the intermediate handlers." (pp. 561, 562.)

The next decision of this court, dealing with the sufficiency of a petition where the pleader sought to state a cause of action based upon liability of the seller of an article not inherently dangerous to a third person for injury resulting from the unsafe, unfit, and dangerous conditions of such article at the time of its sale or delivery, is to be found in *Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317. Nothing would be gained by a detailed review of the long and considered opinion in that case. It suffices to say that upon careful examination of such decision it must be conceded that what is there said and held respecting the doctrine of implied warranty results in an expansion of that doctrine, as theretofore applied under our decisions to sales of food for domestic consumption, to include an implied warranty of the safe and nonexplosive condition of glass bottles when sold and/or delivered in connection with the sale of Pepsi-Cola or other liquid beverages.

If the reasons assigned in the Nichols and Swengel cases, *supra,* for recognizing the exceptions to the general rule of the common law are to be followed and adhered to we are forced to agree there is merit in appellee's position that there is just as much reason for holding public policy, which it is to be noted is the basic foundation for the imposition of liability under the doctrine of implied warranty in cases of such character (see *Lukens v. Freiund,* 669, *supra;* also *Nichols v. Nold,* 621 to 624, incl., *supra*), requires, that a manufacturer, jobber or distributor who sells "Miss Clairol" for use by beauticians on the hair and scalp of beauty shop customers impliedly warrants that preparation as suited and fit for use as a hair preparation which contains no deleterious or harmful substances making it unwholesome or injurious to such customers when so used, as there is for holding that food manufactured and sold for domestic consumption is impliedly warranted as wholesome and fit for that purpose or that glass bottles when sold and/or delivered in connection with the sale of liquid beverages are impliedly warranted to be in a safe and nonexplosive condition. Therefore, on the basis of the reasoning of such decisions and what is there said and held, consistency requires and we feel constrained to hold the scope of the exception to the common law rule of *caveat emptor,* to which we have heretofore referred, should be extended to include sales of the product here in question.

Having reached the foregoing conclusion it necessarily follows that the allegations of the instant petition are sufficient to state a cause of action based on implied warranty and that the action of

the trial court in overruling the demurrer to that pleading should be upheld.

In arriving at the conclusion just announced we have given careful consideration and attention to the arguments advanced by appellant, many phases of which have been touched upon by what has been heretofore stated, to the effect the petition fails to state a cause of action because (1) there was no privity of contract between it and the appellee and (2) the hair dye "Miss Clairol" was not manufactured or packed by it and hence it was under no duty to test that preparation. In our opinion, with similar confronting facts and circumstances, both of these contentions have been decided adversely to appellant's position respecting them. The first in *Nichols v. Nold*, supra, where it is said in substance that privity of contract, in the sense it is ordinarily used, is not required in order to establish liability where the source of the obligation (implied warranty) is imposed by the law on the basis of public policy. The second was definitely determined (see portions of the opinion heretofore quoted) in *Swengel v. F. & E. Wholesale Grocery Co.*, supra.

The judgment is affirmed.

PRICE, J., dissenting.