No. 40,325

ANNIE CAROLYN SIMMONS, *Appellee,* v. THE WICHITA COCA-COLA BOTTLING COMPANY, a Corporation, *Appellant.*

(309 P. 2d 633)

Opinion filed April 6, 1957.

*Robert H. Nelson,* of Wichita, argued the cause, and *W. A. Kahrs, Patrick F. Kelly* and *Julian H. Zimmerman,* all of Wichita, were with him on the briefs for the appellant.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action based on breach of an implied warranty to recover damages for personal injuries caused by drinking part of a bottle of Coca-Cola which contained a packet of safety matches. The trial resulted in a judgment in favor of the plaintiff, and defendant appeals. The basis of plaintiff's action was that defendant in bottling and putting the Coca-Cola on the market for immediate human consumption impliedly warranted that it was fit for that purpose, and the contents of the bottle in question being unfit for human consumption defendant thereby breached such implied warranty.

The undisputed facts insofar as they are pertinent to the issue involved may be briefly stated. Plaintiff, her three sisters, and a niece and nephew went for an automobile ride in the city of Wichita. They stopped at a service station where there was a coin-operated Coca-Cola machine. The Coca-Cola for the machine was bottled in defendant's plant, purchased from defendant by the service station operator and placed in the machine either by the defendant or by employees of the service station. While the niece and nephew went to a nearby drug store, the plaintiff and her sister, not having the correct change to operate the Coca-Cola machine, ordered the Coca-Cola from an employee of the service station. He got change for them, put it in the machine, took out the Coca-Cola, opened the bottles and handed them to plaintiff and her sisters. After plaintiff drank one-third to one-half of the beverage, her sister called to her attention that there was some foreign substance in the bottle, which was later determined to be a book of matches. Plaintiff immediately took the bottle and its contents into the service station and showed it to the owner. He put the cap back on the bottle and plaintiff took it to her home. Shortly after consuming the beverage, plaintiff became violently ill and was taken to the hospital for treatment. Inasmuch as defendant does not complain of the amount of the judgment, the effect on plaintiff from drinking the contaminated beverage needs no further mention.

Plaintiff's witnesses, including the owner and operator of the service station, substantiated the above-mentioned facts and that the foreign substance was in the bottle of Coca-Cola at the time

it was purchased by plaintiff from the station operator. The station operator testified that about 15 minutes after the plaintiff bought the Coca-Cola, he observed one of the bottles having a foreign substance in the bottom of the bottle and that it appeared to be a book of matches. A chemist testified for plaintiff that he ran a qualitative analysis on the contents of the Coca-Cola bottle, which was the remainder that plaintiff had not drunk. He found the partially burned book of safety matches which was soaked with the fluid in the bottle. The analysis showed there was antimony in the Coca-Cola. No quantitative analysis was made, so the amount of antimony present was not determined.

At the conclusion of the plaintiff's evidence, by way of defense the defendant offered the testimony of a chemist, who described the bottling process at the defendant's plant. The witness then described an experiment he conducted by placing a book of matches in four separate bottles, which were then subjected to the washing process used in defendant's plant. The bottles were then filled and capped in the usual process and taken to witness's laboratory for analysis. At this point and before the results of the test were stated by the witness, plaintiff objected and was sustained on the ground that the test was not conducted within the theory of the lawsuit, in that this was an action based upon the breach of implied warranty and not upon the acts of negligence of the defendant in bottling the beverage. This is the crux of this case and is the sole point raised by defendant in its brief. Other specifications of error have been abandoned.

The precise point raised by defendant is whether it may show that no negligence or other action on its part led to the contamination of the beverage. In other words, the question is whether the defendant, as a bottler of beverage for immediate human consumption, may show that if there is contamination it was caused by the action of a third party and thus relieve itself of liability. As stated, this action was brought on implied warranty, and negligence is not the basis of the action.

The trial court held, and we think correctly, that inasmuch as there was no question about the Coca-Cola being contaminated at the time it was sold and delivered to the plaintiff for immediate consumption the defendant is liable to the plaintiff if the foreign substance got into the bottle in question during the process of manufacturing and bottling, whether before or after the washing process,

regardless of the efficiency of the defendant's machinery and the method used in its plant, and regardless of the subsequent experimental tests made by its chemist. In order for defendant to avoid liability under its warranty it must show who contaminated the beverage and not merely that the defendant itself did not. It will not be presumed that a foreign substance got into the bottle of beverage through wrongful acts of a third person. (*Coca Cola Bottling Works v. Simpson*, 158 Miss, 390, 130 So. 479, 72 A. L. R. 143.)

We held in *Challis v. Hartloff*, 136 Kan. 823, 18 P. 2d 199, that neither allegations of contributory negligence nor those negativing any possible carelessness on the part of defendants are an answer or defense to an action to recover on a breach of an implied warranty.

It was held in *Tank Co. v. Oil Co.*, 108 Kan. 690, 196 Pac. 1111, that negligence of the manufacturer is not an issue and it is no defense to a breach of an implied warranty that the tank company used reasonable care in selecting material for the tank and in constructing it. In *Rig & Reel Co. v. Oil & Gas Co.*, 111 Kan. 37, 205 Pac. 1020, we said that the fact that care was used in selecting material used in building the tanks did not relieve the parties from liability on their implied warranty.

In *Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930, we stated:

"Where articles of food for human consumption are manufactured or packed by a manufacturer or packer, and by a series of transactions reach a retail dealer who sells to the consumer, the manufacturer or packer, each intermediate dealer and the retail seller impliedly warrant that such articles of food are wholesome and fit for immediate human consumption." (Syl. ¶2.)

We held in *Parks v. Pie Co.*, 93 Kan. 334, 144 Pac. 202, L. R. A., 1915 C, 179, that a manufacturer or dealer who puts food upon the market for sale does so upon an implied representation and guaranty that it is wholesome and fit for immediate human consumption. Practically, he must know it is fit *or take the consequences* if it proves destructive. Moreover, a manufacturer who prepares food for human consumption and places it in the hands of a dealer for sale is responsible in damages to the consumer who procures such food from the dealer and is injured by partaking of it, and this includes, *inter alia*, beverages placed in capped bottles. See also *Stanfield v. F. W. Woolworth Co.*, 143 Kan. 117, 53 P. 2d 878; *Sharp v. Pittsburg Coca Cola Bottling Co.*, 180 Kan. 845, 308 P. 2d 150.

In view of our decisions, a manufacturer, intermediate handler or a retailer-dealer of food for human consumption is, in effect, an insurer that such food will cause no harmful effects because of deleterious matter therein. The basis for imposing this liability is public policy for the protection of the people as discussed in many of our cases. (*Graham v. Bottenfield's, Inc.*, 176 Kan. 68, 269 P. 2d 413.)

Defendant complains that our decisions have placed too heavy a burden upon the manufacturer and bottler of beverages. This contention was raised in *Challis v. Hartloff*, supra, where it was said that it does indeed place a heavy burden upon manufacturers and dealers of food, but it is one of the hazards of the business and necessary for the protection of the general public.

In view of what has been said, the trial court correctly excluded defendant's proffered evidence as to the efficiency of its machinery and plant and the method used in bottling the Coca-Cola and the subsequent experimental tests made by defendant's chemist as constituting no defense to plaintiff's action based upon a breach of implied warranty.

The judgment of the trial court is affirmed.