No. 41,098

WILLIAM EUGENE CERNES, *Appellee*, v. THE PITTSBURG COCA COLA BOTTLING COMPANY, a Corporation, *Appellant*.

(332 P. 2d 258)

Opinion filed December 6, 1958.

R. L. *Letton*, of Pittsburg, argued the cause, and R. L. *White*, of Pittsburg, was with him on the briefs for the appellant.

*Perry Owsley*, of Pittsburg, argued the cause, and *Sylvan Bruner*, of Pittsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action, based upon breach of an implied warranty, to recover damages for personal injuries caused by drinking a part of a bottled beverage which contained a foreign substance. The basis of plaintiff's action was that defendant in bottling and placing the beverage on the market for immediate human consumption impliedly warranted it was wholesome and fit for such purpose, and the contents of the bottle in question being unfit for human consumption, defendant thereby breached such implied warranty.

Defendant (appellant) alleged that at the time plaintiff (appellee) was drinking from the bottle of beverage he was also eating peanuts and but for his act or omission, or the act or omission of some person or persons other than defendant or its agents, the bottle of beverage from which plaintiff was drinking could not and would not have contained any foreign substance and could not and would not have produced any injury to plaintiff.

On the basis of the issues thus joined the case was tried to a jury which, in answer to the special questions submitted it by the court, found the bottle of Coca Cola contained a harmful foreign substance, that is, particles of a kola nut, when it was removed from the vending machine and at the time plaintiff drank from it, which was not there as a result of any act of plaintiff; that such substance was the sole, direct and proximate cause of plaintiff's illness or aggravation of his pre-existent condition. The jury also returned a general verdict for plaintiff in the sum of $662.50, for which judgment was entered.

Defendant appeals from an order of the trial court overruling its demurrer to plaintiff's evidence and from an order overruling its motion for a new trial.

Defendant first contends the trial court erred in overruling its demurrer to plaintiff's evidence. The argument is that plaintiff failed to prove the breach of implied warranty in not showing the beverage was harmful, deleterious and unwholesome. Approaching this phase of the appeal we must bear in mind our constant holding that in considering the sufficiency of evidence tested by demurrer thereto, the evidence and every reasonable inference to be drawn therefrom must be liberally construed in favor of the party adducing it. Such evidence will not be weighed, even though there may be a conflict between the witnesses or in direct and cross-examination thereof. When so considered, if there is any evidence which sustains plaintiff's case, then the demurrer should be overruled and the matter submitted to a jury. (*Marshall v. Bailey,* 183 Kan. 310, 314, 327 P. 2d 1034; *Harvey v. Palmer,* 179 Kan. 472, 477, 478, 296 P. 2d 1053; *Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904; West's Kansas Digest, Appeal & Error, § 927 [5], and Trial, § 156 [2], [3]; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 488.)

An examination of plaintiff's evidence discloses that on the morning in question he, having had no breakfast and having eaten nothing before and not eating anything at the time, was in the company of Mr. Smith and Mr. Girard in a garage in Arma, where he was handed an open bottle of Coca Cola from a dispensing machine by Mr. Smith about which he noticed nothing unusual, but on the third swallow he swallowed some foreign particle and there was something in his mouth which he "more or less flipped . . . back in the bottle" (he had by then consumed about one-half of

its contents); whereupon, two minutes later he became ill and he and the other men "discussed it a little bit" and "looked in the bottle"; upon examination he found a substance "floating around the bottom of the bottle," which appeared to be "a jelly substance like, of slimy like serum, mud or a bug or something"; he vomited and within five minutes vomited again, and thereafter went home. This condition continued that day and evening, when he called his doctor, who prescribed a medicine for his illness. His evidence further revealed he later picked up the half-empty bottle of cola from the garage and turned it over to his attorney.

Mr. Smith, operator of the garage, who had opened the bottle of Coca Cola, testified that as plaintiff took a drink from the bottle he spit something on the floor which was some of the substance Smith saw in the bottle; that there was "something in the bottle and he [plaintiff] did get a slug of it"; that "it was a jelly substance" and "looked a lot like a wad of matter . . . white matter," that it was a stringy substance floating in the bottom of the bottle.

Mr. Heckert, a chemist, some two weeks later examined the liquid remaining in the bottle of Coca Cola and filtered off "some material floating in it," which "appeared to be a nut of some kind," covered by "a husk or some cellulose material," and tentatively identified it as a kola nut, which comes out of the kola bean from which extract is normally made. He testified, "Kola nuts are rather rare around this part of the country. It is tropical fruit. We don't know too much about it." He also found that some fermentation had taken place "so there was a little, possibly yeast or something of that kind in the bottle." His analysis report stated, "It would appear that any untoward effects produced by drinking this bottle of liquid were largely psychological." He explained "psychological" as distinguished from "actual toxics."

Plaintiff's physician, Doctor Lance, testified that in July, 1956, he had treated plaintiff for thrombosis hemorrhoid, which he "incised under local anaesthesia and removed a clot and treated him conservatively"; that from that day until the day in question he had treated plaintiff in no way for this ailment, nor had plaintiff complained of any difficulty therefrom. He testified further that plaintiff called him on January 29, 1957, stating "he had had a Coca-Cola to drink earlier and there was some type of foreign substance in it, and at the time he called me he was having abdominal cramping

with nausea and diarrhea"; that on January 31 he saw plaintiff, who reported his vomiting had ceased but he was still suffering from the diarrhea, and complained of a pain in his rectum; upon examination, the doctor found plaintiff still had hemorrhoids which protruded outside, a condition which plaintiff reported occurred with each attack of diarrhea. The doctor advised plaintiff to continue taking the prescribed medicine, start sitz baths, take mineral oil and keep free from constipation. He next saw plaintiff August 1 and found him suffering from a massive prolapsis of the hemorrhoid, for which he advised hospitalization and surgery. In answer to counsel's hypothetical question relating the cause and effect of plaintiff's illness, the doctor testified the foreign substance in the cola "could have caused his findings and symptoms . . . the vomiting, abdominal cramps and hemorrhoid condition." Further, on being questioned as to what he assumed comprised the foreign substance in the beverage, he testified plaintiff had told him he thought it was a bug; and on being asked if his answer was based on that assumption, the doctor replied, "It didn't matter what was in it." On being asked to assume the "foreign substance was a part of a cola bean," the doctor replied that his answer to the question "would be the same."

It may be stated as a general rule of this court that where beverage is manufactured and bottled for immediate human consumption and by a series of transactions reaches a retail dealer who sells to the consumer, the manufacturer or bottler impliedly warrants such beverage is wholesome and fit for immediate human consumption. Moreover, the manufacturer or bottler must know the beverage is fit or take the consequences if it proves injurious. Where he places such bottled beverage in the hands of a dealer for sale, the manufacturer is responsible for damages to the consumer, who procures such beverage from the dealer and is injured by partaking of it. (*Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P. 2d 633; *Sharp v. Pittsburg Coca Cola Bottling Co.*, 180 Kan. 845, 308 P. 2d 150; and cases cited therein.)

Our decisions further hold that a manufacturer or bottler of food or beverage for human consumption is in effect an insurer that such food or drink will cause no harmful effects because of deleterious matter therein. The basis for imposing this liability is a matter of public policy for the protection of the people, as discussed in many of our cases. (*Simmons v. Wichita Coca-Cola Bottling Co.*, supra; *Graham v. Bottenfield's, Inc.*, 176 Kan. 68, 269 P. 2d 413.)

Webster's New International Dictionary, Unabridged, Second Edition, defines "wholesome" as promoting mental health or well-being, or physical well-being, beneficial to the health or the preservation of health; "fit" as suitable; and "deleterious" as hurtful or destructive, injurious, detrimental.

We think when taking all the evidence together it was sufficient to justify the inference that plaintiff's condition came from the substance he drank from the bottle. There was medical testimony that it aggravated his pre-existing condition, and the showing of symptoms shortly following the drinking of the beverage, which contained a foreign substance, was sufficient to take the case to the jury on the question of a causal connection. It is not necessary to produce a chemical analysis or medical testimony showing the beverage poisonous when the consumption thereof is followed by symptoms from which the simple, reasonable and common-sense inference could be drawn by the jury that plaintiff became sick and was nauseated and thereby injured, even though not seriously, as a direct result of drinking the beverage in question. This was an action for breach of warranty that the content of the bottle was pure, wholesome and suitable for consumption. The presence of any foreign body obnoxious to that purpose would amount to a breach of that warranty, which would permit recovery of some damages if injury resulted therefrom. A person drinking from a bottle of Coca Cola, which is presumably clear, pure, refreshing and wholesome, and suddenly finding his mouth full of "a jelly substance like, of slimy like serum, mud or a bug or something," swallowing part of it but being able to spit some of it out, then looking into the bottle and finding the slimy substance, could very easily become ill and suffer from intense nausea which could produce illness requiring treatment by a physician, as was the case here. Whether the illness was produced by and resulted from emotional distress caused by ascertaining the presence of the slimy matter in the bottle is of no consequence, as defendant's failure to keep this foreign matter out of the bottle was the cause of the emotional and psychological distress which directly resulted in the physical injury. Certainly, it cannot be said that such slimy substance is a normal thing to be found in Coca Cola and that it is conducive to the health and well-being of a person purchasing the beverage in the belief it is refreshing, nourishing and wholesome. We are of the opinion that plaintiff's evidence was sufficient to make out a prima facie

case to be submitted to the jury for determination of the questions involved.

The defendant next contends it was error for the court to refuse to give certain of its requested instructions. We will not attempt to list the requested instructions and those given by the court. Suffice it to say, they have been examined and we believe the instructions given adequately covered the matter contained in the requested instructions which the court refused to give.

Defendant also contends it was error for the court to strike from its answer and exclude from evidence matters relating to the manufacturing and bottling processes carried out at defendant's plant. This same matter was squarely presented in *Simmons v. Wichita Coca-Cola Bottling Co.*, supra. In that case we held that in an action on implied warranty evidence of the method of manufacturing and bottling the beverage was not admissible. Hence, the court committed no error.

Defendant further contends the court committed error in denying its request that the jury view the manufacturing equipment. Such matters rest in the sound discretion of the trial court. (*Sharp v. Coca Cola Bottling Co.*, supra.) We cannot say the court abused its discretion in this case.

We have thoroughly searched the record and find no error. The judgment of the trial court should be affirmed.

It is so ordered.