No. 46,454

BEVERLY ROBBINS, *Appellee,* v. ALBERTO-CULVER CO., *Appellant.*

(499 P. 2d 1080)

Opinion filed July 19, 1972.

*Barton Brown,* of the firm of Wallace, Saunders, Austin, Allen, Brown & Enochs, of Overland Park, argued the cause and *Gary D. Hale,* of the same firm, was with him on the brief for the appellant.

*William M. Cook,* of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is a products liability case. The appeal raises questions with respect to the liability of one who manufactures,

processes or sells cosmetic preparations such as hair rinses, shampoos, hair tints and the like, where personal injury results therefrom to persons with allergy problems.

In the present case the offending product was Rinse Away, a preparation primarily for the treatment and control of dandruff. The product is admittedly manufactured by the defendant, Alberto-Culver Company. The plaintiff, Beverly Robbins, who has since remarried and will be referred to herein either as plaintiff or Beverly, came into contact with Rinse Away when she used the rinse, diluted as per directions, on her former mother-in-law's hair, which had just been shampooed. This operation required Beverly to rub or massage the preparation into the hair and scalp of the mother-in-law with her finger tips. The following day Beverly's fingers began to ache, she had chills and her mouth began to swell. Her condition was medically diagnosed as contact dermatitis and it persisted for some six weeks. During that time Beverly had hive-like eruptions and blisters over various parts of her body, her hands and fingers became swollen, red, tender to the touch, and quite painful. The doctor related plaintiff's condition to an allergic reaction and there was evidence from which the inference could be drawn that she was sensitive to Rinse Away and that such was the cause of her misery.

So far as the record discloses, the plaintiff introduced no evidence as to what the ingredients of Rinse Away may have been or as to the chemical analysis or characteristics of the product.

The defense, in brief, was based on the claim that Rinse Away contains no sensitizers or primary irritants and that it is an innocuous product which is harmless to the vast majority of people who use it according to the directions, even though it may be harmful to the extremely rare individual who is hypersensitive to it—a minority, so it was said, of some two users per million sales.

The matter was tried to the court on the basis of breach of implied warranty. After making certain findings, the trial court entered judgment in favor of the plaintiff and the defendant company has appealed. In its statement of points the defendant maintains there was no substantial evidence to establish a breach of warranty, that the evidence proved as a matter of law that the injury was due to an allergy or idiosyncrasy on the part of the plaintiff and that the trial court erred in holding the defendant to be an insurer of its products.

Certain findings are strenuously challenged by the defendant. They are as follows:

"(6) The Court further finds that said Rinse-Away product as related to the plaintiff had a deleterious quality contained therein which gave rise to plaintiff's injuries and pain related thereto, which the expert witness, one Dr. Snodell, testified created a condition known as contact dermatitis.

"(7) The Court further finds as a matter of law that the manufacturer impliedly warrants such products are suited and fit for the purpose for which they are sold and an insuror that said products will not cause harm to the user by reason of the contents contained therein.

"(8) That as a matter of law the facts set forth by the testimony in this case indicate that as far as the plaintiff was concerned the product was unfit and unwholesome for the purpose intended."

The predominant issue on appeal, as we conceive it to be, is whether the trial court, in trying the cause and in entering judgment, proceeded on the correct legal basis, and whether it adopted the proper legal standard for determining the issue of liability.

In a general way we might point out that early in its history this court opined that where food is sold for human consumption there is an implied warranty on the seller's part that it is fit and wholesome for its intended use. (*Lukens v. Freiund,* 27 Kan. 664.) In a much later case, *Swengel v. F. & E. Wholesale Grocery Co.,* 147 Kan. 555, 77 P. 2d 930, it was held in respect to the sale of food intended for human consumption that the manufacturer, the packer and each intermediate dealer, as well as the retailer, each impliedly warrants that the food is wholesome and fit for immediate human consumption, whether or not it be sold in bulk or in sealed packages or containers.

This rule of liability as to foodstuffs, based on an implied warranty of fitness and suitability for intended use, was extended to apply as well to the sale of a hair preparation known as "Miss Clairol." (*Graham v. Bottenfield's Inc.,* 176 Kan. 68, 269 P. 2d 413.) The defendant in that case was a wholesale distributor. The *Graham* case was later followed by *Patterson v. Weyer, Inc.,* 189 Kan. 501, 370 P. 2d 116, where the defendants, a manufacturer and a distributor, had produced and marketed a cold wave permanent preparation with the exotic title of Rayette Goddess. In the opinion, this court said:

"At the outset it may be stated that in this jurisdiction a manufacturer, distributor or retailer who sells hair preparations does so under the implied warranty that such product is suited and fit for the purpose for which it is sold. (*Graham v. Bottenfield's, Inc.,* 176 Kan. 68, 269 P. 2d 413; 1 Products Liability, Hursh, § 3:18, pp. 429-431.) . . ." (p. 502.)

The recently enacted Uniform Commercial Code also deals, in part, with the subject of implied warranty. So far as pertinent to this case, K. S. A. 84-2-314 provides:

"(1) Unless excluded or modified (section 84-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

"(2) Goods to be merchantable must be at least such as

. . . . . . . . . . . . . . . .

(c) are fit for the ordinary purposes for which such goods are used . . .

In the Kansas Comment which follows this section, the Legislative Council Judiciary Committee had this to say:

"Subsection (2) (c) states the fundamental concept which underlies much of the rapidly developing law of product liability. The concept of fitness for ordinary purposes is part of the warranty of merchantability and extends protection to the ultimate consumer as well as to a merchant buying for resale. The modern line of Kansas authority accords with the Code. (Citing cases.)"

While it is apparent that the rule which imposes liability on the producers and vendors of beauty preparations is no stranger within our sun-kissed borders, we are plowing a somewhat virgin field where allergic reactions occur. This is a case of first impression in this state, although it is true that the question raised its horny head in *Patterson v. Weyer, Inc.,* supra. However, the jury before which that case was tried expressly found that the plaintiff's injuries did not result from an allergy, or an idiosyncrasy as the term is sometimes used in a medical sense.

Our task now is to define the proper standard to be followed in ascertaining the liability of the producer or purveyor of cosmetic preparations, and similar products, for personal injuries occasioned thereby to persons who are allergic or hypersensitive to their use. The authorities are not in complete accord, but we believe we would be safe in saying at the start that as a general rule neither the vendor nor the producer of such products is held to be an insurer of his wares. (*Howard v. Avon Products, Inc.,* 155 Colo. 444, 452, 395 P. 2d 1007; *Cudmore v. Richardson-Merrell, Inc.,* 398 S. W. 2d 640, 644 [Tex. Civ. App.]; *Gerber v. Faber,* 54 C. A. 2d 674, 682, 129 P. 2d 485.) In *Bradley v. Conway Springs Bottling Co.,* 154 Kan. 282, 288, 118 P. 2d 601, an action to recover damages for personal injuries sustained when a Pepsi-Cola bottle exploded, this court said that the bottlers and distributors of such beverages were not insurers.

In *Bennett v. Pilot Products Co., Inc.,* 120 Utah 474, 477, 235

P. 2d 525, 26 A. L. R. 2d 958, the Utah court expressed itself this way:

". . . [We] cannot require the merchant to assume the role of absolute insurer against physiological idiosyncrasy. . . ."

The concept of imposing absolute legal liability upon the manufacturer of merchandise was urged upon this court in *Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380, where it was contended that a home bottle capping device, the "Handy Dandy", was defective in design, by reason of which a bottle exploded while being capped causing personal injury to the plaintiff. In reply to the plaintiff's contention we said:

"We note that nearly all the cases from other jurisdictions which have dealt with the manufacturer's duty of design have predicated liability on the ground of negligence rather than implied warranty. (Anno. 76 A. L. R. 2d 91, *et seq.*; 3 Hursh, American Law of Products Liability § 20:1, *et seq.*) The courts are nearly unanimous in saying the product-design duty of a manufacturer is that of reasonable care, but he is not an insurer that his product, from a design standpoint, be accident-proof or incapable of producing injury." (p. 648.)

See, also, 1 Products Liability, Frumer-Friedman, § 6.04, p. 101.

In her brief, the plaintiff calls attention to certain language found in *Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P. 2d 633:

". . . [A] manufacturer, intermediate handler or a retailer-dealer of food for human consumption is, in effect, an insurer that such food will cause no harmful effects because of deleterious matter therein. . . ." (p. 39.)

This language was echoed in *Cernes v. Pittsburg Coca Cola Bottling Co.*, 183 Kan. 758, 761, 332 P. 2d 258.

The significance of these observations must be weighed in the scales of attending circumstances. The deleterious matter referred to in *Simmons* was a partially burned book of safety matches, and a chemical analysis of the coca-cola revealed antimony. In *Cernes* the foreign substance found in the bottle was apparently a kola nut which had fermented and had degenerated into a yeasty, slimy substance. In neither instance was the offending substance an indigenous element of the coca-cola drink. The late Judge Huxman, speaking for the court in *Ray v. J. C. Penney Company*, 274 F. 2d 519, explained the *Cernes* case in this way:

". . . In that case, there was a foreign substance in the particular bottle which caused the injury. The court did not say there would be liability from drinking a wholesome bottle of coca-cola, free from foreign substances, merely because of a rare form of allergy the consumer had which made him allergic to wholesome coca-cola." (p. 522.)

There are two principal positions taken, with some variations, by those authorities which have had to deal with products liability *vis-a-vis* allergic reactions. One line of authorities, which in general appears to be most prevalent, would deny recovery under a breach of implied warranty claim, where the offending product can be used without harm by a normal person. The other cases proceed on the theory that protection cannot logically be restricted to a predetermined arbitrary class such as the normal buyer, and that the seller is not absolved of liability in a breach of warranty action simply because only a small percentage of users are harmed by use of the product. A good many cases on the subject are found in annotations in 26 A. L. R. 2d 963, *et seq.*, and A. L. R. 2d Later Case Service, Supplementing 25-31, p. 223, *et seq.*

The dichotomy is pointed out in *Crotty v. Shartenberg's-New Haven, Inc.*, 147 Conn. 460, 162 A. 2d 513, but the court suggests that the cleavage is not as broad or irreconcilable as might first be thought, because of the factual distinctions existing in many of the cases. This view finds expression, also, in *Esborg v. Bailey Drug Co.*, 61 Wn. 2d 347, 378 P. 2d 298, where the court said:

"A critical analysis of the lines of decision referred to in the *Crotty* case, leads us to the conclusion, not infrequently expressed by other writers in the field, that the so-called majority and minority views are, upon their facts, at least, reconcilable. The first cited cases, representative of the majority, arrive at their denial of liability upon the factual premise that the plaintiff before them was, under the evidence presented, peculiarly unique in susceptibility to the content of the product involved, and was not representative of any definable or significant group of consumers. The second line of cited authorities accord liability, upon the basis of the facts before them indicating the complaint to be a member of an identifiable and significant class or number of consumers, composed of the innocently allergic." (p. 357.)

The common thread of foreseeability lies at the core of a good many cases where allergic reactions are involved. This is recognized in 3 Products Liability, Frumer-Friedman, § 29.03[1], where the authors say:

"It has been held or recognized in a majority of cases that if a product can be used by a 'normal' person without injury, there is no breach of an implied warranty of fitness or merchantability. It should be noted that, while knowledge of danger is not ordinarily a prerequisite to liability in warranty, the cases in this area seem to stress the lack of such knowledge on the part of the supplier." (pp. 120, 121.)

At the risk of seeming over-simplistic, we believe the concept of foreseeability is the key in determining liability on the part of one

who manufactures or sells a fabricated product which causes an allergic reaction in a person who may be susceptible to it. In this connection we may point out that we are not speaking here of products in their natural state, such as eggs, strawberries, etc.

The rule appears to be well stated in *Ray v. J. C. Penney Company,* supra, an action based on breach of warranty, in which the plaintiff was seeking damages for personal injuries sustained from wearing gloves purchased at a Penney store. There was medical evidence which related the injury to the gloves and there was evidence that the plaintiff had a rare allergy and an unusual sensitivity to something contained in the gloves. In an instruction which was challenged by the plaintiff, the trial court charged the jury:

" 'You are instructed that warranties do not extend to injuries caused by peculiar idiosyncrasies or physical condition of a user which are not reasonably foreseeable.

" 'The law requires a person to reasonably guard against probabilities, not possibilities, and one who sells a product on the market, knowing that some unknown few, not in an identifiable class which could be effectively warned, may suffer allergic reactions or other isolated injuries not common to ordinary or normal persons, need not respond in damages.

" 'If you find that the plaintiff's injury was an isolated instance to an unusually susceptible individual then you must find for the defendant.' " (p. 521.)

In affirming a judgment entered in favor of the defendant, the United States Court of Appeals, Tenth Circuit, concluded that the instruction given by the trial court "stated the correct principle of law as announced in the overwhelming number of cases which hold that warranties do not extend to injuries caused by peculiar idiosyncrasies or physical conditions of a user which are not reasonably foreseeable."

In *Cudmore v. Richardson-Merrell, Inc.,* supra, where recovery was sought for injuries alleged to have resulted from the use of a drug, it was said by the Texas court:

". . . We believe and we hold that in such cases the manufacturer of a drug intended for human consumption or intimate bodily use should be held liable on the grounds of implied warranty for injurious results only when such results or some similar results ought reasonably to have been foreseen by a person of ordinary care in an appreciable number of persons in the light of the attending circumstances. . . ." (p. 644.)

A like rule of foreseeability was announced by the Supreme Court of Washington in *Esborg v. Bailey Drug Co.,* supra, where the allergic reaction stemmed from the use of a hair tint preparation.

The court said it would be reasonable to require the plaintiff, in seeking to establish a breach of warranty against which the defense of allergy was interposed, to produce evidence to show that the suspect ingredient "is harmful to a reasonably foreseeable and appreciable class or number of potential users of the product."

The principle of foreseeability has been recognized by this court. In the recent case of *Huebert v. Federal Pacific Electric Co., Inc.,* 208 Kan. 720, 494 P. 2d 1210, we applied the rule in an action to recover damages for personal injuries in a proceeding based on an express warranty.

It is obvious that the trial court did not base its decision in the present case on the reasonable foreseeability of harm. The court made no finding whatever in this respect, nor have we discovered in the record any findings of fact from which a determination as to foreseeability might be drawn or inferred. On the contrary, as the findings clearly indicate, the court concluded as matters of law that the defendant was an insurer that its products would not cause harm, and that as to this plaintiff its products were unfit and unwholesome for their intended purpose. It is thus apparent that this cause was tried and judgment was entered on an erroneous legal theory. Accordingly, the judgment cannot stand.

Under ordinary circumstances, whether harm is reasonably foreseeable from a given action is a question to be determined by the trier of the facts, be it jury or the court. In this respect the procedure is no different than when any disputed question of fact arises which is material to the outcome of a lawsuit. It is only when the minds of reasonable men could arrive at but one conclusion that the question may be determined as a matter of law. This proposition was tersely put by the court in *Esborg v. Bailey Drug Co.,* supra, in this fashion:

"What constitutes, in a given case, a reasonably foreseeable and appreciable class or number of potential users, is incapable of precise or quantitative definition. In the absence of proof to the contrary, upon which the minds of reasonable men could not differ, it would appear to present a question of fact for the trier of the facts, bearing in mind the usual and ordinarily accepted meanings of the words employed." (p. 358.)

Under the circumstances shown to be present here, we think the issue of foreseeability may not be determined as a question of law, but that a question of fact is presented which must be resolved. Evidence was presented on behalf of the defendant that over a period of some ten years the company had received ninety-nine

complaints, the last one in 1970, which averages out as two complaints per million bottles sold during that period of time; that the complaints covered such problems as rash on head and ears, hair loss, breaking out of scalp, itching, skin trouble, allergic reaction and swollen eyes; and that the company does not have a written requirement that all distributors and retail stores selling Rinse Away report any complaints received. Whether the accumulation of complaints of allergic reactions up to the time of injury (see *Merrill v. Beaute Vues Corporation*, 235 F. 2d 893, 897) was sufficient for the defendant to have reasonably apprehended that its product would harm an appreciable class of people is a matter for determination as a fact question.

For the reasons given, this case must be reversed and returned for a new trial where the relevant issues will be determined in accordance with the views expressed herein.

It is so ordered.