**Jean JOHNSON, Plaintiff,**

v.

**C.F.M., INC., d/b/a Convenience Food Mart, Inc., Defendant.**

**Civ. A. No. 88–2525–0.**

United States District Court, D. Kansas.

Nov. 16, 1989.

Michael Redmon and Annette M. Jackson, Kansas City, Kan., for plaintiff.

J. Nick Badgerow and Edward C. Fensholt, Spencer Fane Britt & Browne, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on defendant's motion for summary judgment. Jean Johnson ("Johnson") claims that she was negligently injured by Convenience Food Mart, Inc. ("CFM") as a result of her ingesting coffee grounds present in a cup of coffee purchased from defendant. The coffee grounds caused plaintiff to suffer a gastrointestinal disorder. For the reasons stated below, defendant's motion for summary judgment is denied.

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

The pertinent facts are as follows. At CFM's premises on or about May 16, 1986, plaintiff purchased a cup of coffee from defendant. The cup contained more than a minimal amount of coffee grounds. Within several minutes of purchasing the coffee, Johnson consumed it. In the process of drinking the coffee, she ingested coffee grounds. The coffee grounds remaining in the cup after plaintiff drank the coffee were sufficient in number to line the sides of the cup. Johnson began suffering from Crohn's Disease[1] or some other gastrointestinal disorder in May of 1986. Plaintiff stated that she has been drinking coffee for fifteen to twenty years and she usually drinks one to two cups of coffee each day.

A manufacturer of beverage fit for human consumption is an insurer that such drink will cause no harmful effects because of deleterious matter therein. *Cernes v. Pittsburg Coca Cola Bottling Co.*, 183 Kan. 758, 761, 332 P.2d 258, 261–62 (1958).[2] The basis for "imposing this

---

1. Crohn's disease is an inflammatory bowel disorder characterized by frequent attacks of diarrhea, severe abdominal pain, nausea, fever, chills, weakness, anorexia, and weight loss. In many instances the inflammation extends to other areas of the bowel or to the stomach, duodenum, or mouth. Persons suffering from Crohn's disease are frequently hospitalized and often become depressed because of the relentless, painful character of the disease. *Mosby's Medical & Nursing Dictionary* 301–02 (W.D. Glanze 2d ed. 1986).

2. The Court noted that "Webster's New International Dictionary, Unabridged, Second Edition, defines ... 'deleterious' as hurtful or destructive, injurious, detrimental." *Cernes v. Pittsburg Coca Cola Bottling Co.*, 332 P.2d at 262.

liability is a matter of public policy for the protection of the people, as discussed in many of our cases." *Id.* (citations omitted). This burden "is one of the hazards of the business and necessary for the protection of the general public." *Simmons v. Wichita Coca–Cola Bottling Co.*, 181 Kan. 35, 39, 309 P.2d 633, 636 (1957).

There is a division of authority as to the test which should be applied where injury is suffered from an object in food or drink. Defendant suggests that the question of whether the coffee was "defective" should turn on whether it contained a "foreign" substance.[3] Noting that coffee grounds are organically related to coffee, CFM argues that it would not be liable under such a test. Where food or beverage is involved, however, we are unaware of any appellate decisions in Kansas applying a "foreign-natural" test.

Given its concern for the public, we believe that the Kansas Supreme Court would not adopt a test that allows those who prepare and sell food or beverages to escape liability simply because a substance was "natural" to the food item or beverage in its original state. The reasoning of the cases rejecting this test are persuasive. In *Ex parte Morrison's Cafeteria of Montgomery, Inc.*, 431 So.2d 975 (1983), the Supreme Court of Alabama stated:

> The undesirability of the foreign substance test lies in the artificial application at the initial stage of processing the food without consideration of the expectations of the consumer in the final product served. Surely it is within the expectation of the consumer to find a bone in a T-bone steak; but just as certainly it is reasonable for a consumer not to expect to find a bone in a package of hamburger meat. It is entirely possible that a natural substance found in processed food may be more indigestible and cause more injury than many "foreign" substances.

*Id.* at 978. In similar vein, the court in *O'dell v. DeJean's Packing Co., Inc.*, 585 P.2d 399 (Okla.Ct.App.1978) noted:

> [T]here seems little logic in the "foreign-natural" test. It appears the weakness in this test leads to ridiculous results. Where is the line drawn? For example, chicken bones are natural to chicken, but so are beaks, claws, and intestines. One therefore wonders what the courts in the jurisdictions following the "foreign-natural" test would decide in the chicken soup case if it were a chicken beak or claw that caused the damage rather than a chicken bone, because all three parts are "natural" to the chicken. These jurisdictions appear to focus their attention on the product in its original or natural form and not on the end product bought by the consumer. Such reasoning assumes all substances which are natural to the food are anticipated to possibly be in the food ultimately purchased in processed form.

*Id.* at 402. *See also Williams v. Braum Ice Cream Stores, Inc.*, 534 P.2d 700, 701–02 (Okla.Ct.App.1974). Likewise, in *Zabner v. Howard Johnson's, Inc.*, 201 So.2d 824 (Fla.Dist.Ct.App.1967), the court stated:

> The "foreign-natural" test as applied as a matter of law by the trial court does not recommend itself to us as being logical or desirable. The reasoning applied in this test is fallacious because it assumes that all substances which are natural to the food in one stage or another of preparation are, in fact, anticipated by the average customer in the final product served. It does not logically follow that every product which contains some chicken must as a matter of law be expected to contain occasionally or frequently chicken bones or chicken bone slivers because chicken bones are natural to chicken meat and both have a common origin.... A nutshell natural to nut meat can cause as much harm as a foreign substance, such as a pebble, piece of wire or glass. All are indigestible and likely to cause injury.

*Id.* at 826. We believe the Kansas decisions in *Cernes* and *Simmons* making man-

---

**3.** Some courts have held that there is no breach of implied warranty if the object in the food was "natural" to the food served. *See, e.g., Adams v. Great Atlantic and Pacific Tea Co.*, 251 N.C. 565, 112 S.E.2d 92 (1960); *Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 59 P.2d 144 (1936); *Goodwin v. Country Club of Peoria*, 323 Ill.App. 1, 54 N.E.2d 612 (1944).

ufacturers, retailers and dealers of food and beverages insurers that their products will not be harmful precludes application of the "foreign-natural" test.[4]

Defendant also argues that summary judgment should be entered in its favor because the present case closely mirrors *Robbins v. Alberto–Culver Co.*, 210 Kan. 147, 499 P.2d 1080 (1972). *Robbins* was a products liability case which raised questions with respect to the accountability of one who manufactures hair rinses, shampoos, and hair tints. *Id.*, 499 P.2d at 1081. The Court stated that "the concept of foreseeability is the key in determining liability on the part of one who manufactures or sells a *fabricated product* which causes an allergic reaction." *Id.* at 1085 (emphasis added).

CFM suggests that it could not have foreseen that plaintiff would have suffered from Crohn's disease as a result of coffee grounds. We believe, however, that the foreseeability standard stated in *Robbins* should not apply in the instant case. Coffee is not the type of "fabricated product" referred to in *Robbins*. Immediately after announcing the foreseeability standard, the Court specifically stated it was "not speaking here of products in their *natural state,* such as eggs, strawberries, etc." *Id.* (emphasis added). Coffee grounds more closely resemble a product in its natural state than a "fabricated product." [5] CFM in fact noted in its memorandum in support of summary judgment that coffee grounds are "natural" to coffee.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is denied.

4. Defendant urges this court, in the alternative, to apply a "reasonable expectations" test. The court in *Cernes* and *Simmons* did not, however, instruct those selling food or beverage to "reasonably" insure their products meet consumer expectations; rather, the Court clearly stated that manufacturers, retailers and dealers of food and drink must insure their products do not cause any harmful effects.

5. *Robbins* can be further distinguished from the case at bar. First, *Robbins* involved a finished product, as intended for sale, consumption, and distribution by the defendant. Here, the coffee was inadequate because it contained coffee grounds. Second, there is no indication that Crohn's disease or the gastrointestinal disorder suffered by plaintiff is the same type of "allergic reaction" referred to in *Robbins*.