Mrs. Ferol RAY, Appellant,

v.

**J. C. PENNEY COMPANY, Appellee.**

No. 6219.

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1959.

R. R. Mitchell, Dodge City, Kan. (W.
C. Gould, Don C. Smith, Dodge City,
Kan., and Bernie D. Frigon, Cimarron,
Kan., were with him on the brief), for
appellant.

H. E. Jones and William P. Thompson, Wichita, Kan. (A. W. Hershberger,
Richard Jones and Jerome E. Jones,
Wichita, Kan., were with them on the
brief), for appellee.

Before HUXMAN, PICKETT and LEWIS, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action in which the plaintiff, Mrs. Ferol Ray, sought damages from J. C. Penney Company because of injuries she suffered·from wearing a pair of gloves she purchased from a J. C. Penney Store. The complaint alleged that, "The gloves sold plaintiff by defendant on December 24, 1956, contained deleterious and harmful substances, the exact nature of which plaintiff does not know and cannot state as they are peculiarly within the knowledge of the defendant, and by reason thereof and the defendant's breach of warranty of fitness, wholesomeness and wearableness of said gloves, the plaintiff was injured and damaged * * *." The complaint further stated that the dye in the gloves bled and poisoned the plaintiff and caused her material damage. Issues were joined and the case was submitted to a jury on the court's instructions. The jury returned a verdict for the defendant.

The evidence shows that on December 24, 1956, appellant purchased a pair of blue leather gloves at the Penney store in Dodge City, Kansas. She put them on at the time of purchase and continued to wear them for approximately two hours. During the time she was wearing them, she became quite ill, and upon arriving home, removed the gloves and found that her hands were blue. The evidence appears to be without dispute that the coloring on her hands came from bleeding of the dye used to color the leather from which the gloves were made. There was evidence that appellant had a rare allergy and an unusual sensitivity to something in the gloves. There was medical testimony that there was a causal connection between the wearing of the gloves and appellant's illness; that the cause thereof might have come from the dye or from the leather itself; that her reaction to something in these gloves was very rare. Dr. Hale testified that in his experience he had never come across a case such as this. When asked to give his opinion as to the number of people who might react as she did to the wearing of these gloves, he at first replied that he could give no estimate. Upon further questioning, he answered, over objection, that in his opinion there would be no more than one in a million.

A number of assignments of error are urged for reversal. It is urged, first, that the trial court erred in admitting evidence of manufacturing techniques, maintenance and procedure; second, that the trial court erred in instructing the jury; third, that the trial court erred in admitting the incompetent, irrelevant, prejudicial testimony of Dr. Hale, which was based solely on conjecture; and, fourth, that the trial court erred in allowing defendant to change its answer to plaintiff's interrogatory Number 3.

■ At the pretrial conference, the court ruled that evidence of the methods of manufacture would not be admitted. In the trial, the defendant was permitted, over objection by plaintiff, to introduce evidence of processing techniques used in the manufacturing of these gloves. This evidence was not introduced to show the processing formula. It related to the number of persons who came in contact with the specific leather from which these particular gloves were made, without injurious results. Its admissibility was expressly limited to this purpose. No reversible error resulted from its admission.

■ It is urged that the court erred in permitting Dr. Hale to state that in his opinion not more than one out of a million persons would be affected, as plaintiff was, from wearing these gloves. It may be conceded that his answer was based upon a mere conjecture. The Doctor had previously testified that plaintiff's reaction to the wearing of these gloves was very rare and that in all his practice, he never had come across a similar case. At most, the answer complained of merely emphasized his previous testimony as to the rarity of such

an occurrence. The answer could not have misled the jury.

■ Further complaint is made to the ruling of the court permitting defendant to change its answer to plaintiff's interrogatory Number 3. Prior to trial, plaintiff had asked defendant in interrogatory Number 3 to, "State the complete chemical analysis of the dye used to color the leather from which the said gloves in J. C. Penney Co. lot #4509 were made." Counsel for defendant immediately sought to obtain this information but was unable to do so because the manufacturer of the gloves, who was not a party to the action, refused to reveal the secret process. About a week before trial, defendant's counsel answered the interrogatory over the telephone in a conversation with plaintiff's attorney, stating, "Manufacturer of the dye will not disclose its formula to the defendant. It is, however, an aniline dye." After the jury was empaneled and the trial had commenced, H. E. Jones, one of defendant's attorneys, informed R. R. Mitchell, one of plaintiff's attorneys, that defendant's attorneys had just received the formula that morning and that the formula did not contain what they had orally stated it contained, although there was aniline in the formula. Shortly thereafter, defendant asked and was granted permission, over plaintiff's objection, to amend its answer to interrogatory Number 3 to conform to the new information received. To have permitted the incorrect answer to interrogatory Number 3 to stand, would have resulted in the perversion of the object of a trial which is, and always must be, to establish the truth. To permit an inaccuracy of this nature to stand, through no fault of any of the attorneys to the action, would not permit the ordinary and correct administration of justice. If plaintiff was handicapped in the presentation of her case through this late development, a motion for continuance would have been the proper procedure, but no such motion was made. We find no error in permitting the correction to

answer interrogatory Number 3 to speak the truth.

The most serious question arises with respect to the court's instruction Number 6, in which the court instructed the jury that,

"You are instructed that warranties do not extend to injuries caused by peculiar idiosyncrasies or physical condition of a user which are not reasonably foreseeable.

"The law requires a person to reasonably guard against probabilities, not possibilities, and one who sells a product on the market, knowing that some unknown few, not in an identifiable class which could be effectively warned, may suffer allergic reactions or other isolated injuries not common to ordinary or normal persons, need not respond in damages.

"If you find that the plaintiff's injury was an isolated instance to an unusually susceptible individual then you must find for the defendant."

The contention is that this instruction is contrary to the law as declared by the Kansas Supreme Court. It is contended that this instruction is in direct conflict with the decisions of the Kansas courts in such cases as Cernes v. Pittsburg Coca Cola Bottling Company, 183 Kan. 758, 332 P.2d 258; Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P.2d 413; and Simmons v. Wichita Coca-Cola Bottling Co., 181 Kan. 35, 309 P.2d 633.

This case was tried on the theory of a breach of implied warranty. The complaint states a case predicated on breach of warranty. At the pretrial conference, plaintiff's attorney stated, "I think, Your Honor, I failed to make our position clear on the theory of law which we bring the case. It is a breach of implied warranty of fitness and it, of course, will be our contention throughout the trial that the defendant is not and will not be permitted under the law of Kansas to show any due care in the manufac-

ture; that that is not an element of the case and will not be material to any of the issues involved." That this was the theory upon which the plaintiff proceeded is further evidenced by requested instructions numbered 1 and 3, in which he asked the court to instruct, "No. 1. You are instructed that a retailer, who sells articles of clothing to be worn by its customers, is in effect an insurer that wearing such articles of clothing will cause no harmful effects because of deleterious matter therein. (Deleterious means: Physically harmful, injurious, detrimental). The basis for imposing this liability is a matter of public policy for the protection of the people." "No. 3. You are instructed that the mere fact that only a small proportion of those who use a certain article would suffer injuries by reason of such use does not absolve the retailer from liability under implied warranty."

As we analyze the Kansas cases, no case has gone so far as to impose absolute liability, even in the case of food. In Cernes v. Pittsburgh Coca Cola Bottling Co., supra, the court said, "Our decisions further hold that a manufacturer or bottler of food or beverage for human consumption is in effect an insurer that such food or drink will cause no harmful effects *because of deleterious matter therein.*"[1] [183 Kan. 758, 332 P.2d 261.] In that case, there was a foreign substance in the particular bottle which caused the injury. The court did not say there would be liability from drinking a wholesome bottle of coca-cola, free from foreign substances, merely because of a rare form of allergy the consumer had which made him allergic to wholesome coca-cola.

The Cernes case, supra, is the strongest case in favor of appellant's position

by the Kansas court, and as indicated, it does not support appellant's contention of absolute liability. The Graham case involved a hair preparation. The petition alleged that the preparation contained deleterious and harmful substances which caused plaintiff's injuries. A demurrer on the ground that the complaint failed to state a cause of action was sustained. All the Supreme Court held was that this was error, and, in effect, it held that plaintiff should have been offered an opportunity to establish these allegations. The Simmons case, supra, likewise involved a contaminated bottle of beverage. All the court held was that as to such a bottle, the manufacturer's negligence was not an issue and the manufacturer would not be permitted to show the care exercised in the processing and bottling of the beverage.

We think the Kansas law, as outlined above, states the general rule with respect to foods or beverages. But we can glean nothing therefrom which would support a conclusion that Kansas would impose liability where a person had drunk a bottle of wholesome coca-cola, free from foreign, deleterious substance, and had become ill due to a rare allergy to coca-cola, or because of the peculiar systemic condition of the user.

In the absence of a specific pronouncement by the Kansas court to the contrary, we conclude that the court's instruction Number 6 stated the correct principle of law as announced in the overwhelming number of cases which hold that warranties do not extend to injuries caused by peculiar idiosyncrasies or physical conditions of a user which are not reasonably foreseeable.[2]

Affirmed.

1. Emphasis supplied.

2. See Merrill v. Beaute Vues Corp., 10 Cir., 235 F.2d 893, for a full discussion of this case.