No. 46,264

In the Matter of the Condemnation Appeal of HAROLD C. SCHWARTZ and GERALDINE H. SCHWARTZ, *Appellees,* v. WESTERN POWER & GAS COMPANY, INC., *Appellant.*

In the Matter of the Condemnation Appeal of WILFRED SCHARTZ and ELSIE MAE SCHARTZ, *Appellees,* v. WESTERN POWER & GAS COMPANY, INC., *Appellant.*

In the Matter of the Condemnation Appeal of ROBERT W. MERMIS, *Appellee,* v. WESTERN POWER & GAS COMPANY, INC., *Appellant.*

In the Matter of the Condemnation Appeal of WAYNE E. PRITCHARD and HELEN PRITCHARD, *Appellees,* v. WESTERN POWER & GAS COMPANY, INC., *Appellant.*

(494 P. 2d 1113)

Opinion filed March 4, 1972.

*Glenn Opie,* of Great Bend, argued the cause and *Fred L. Conner,* of Great Bend, was with him on the brief for the appellant.

*Robert P. Keenan,* of Great Bend, argued the cause and *Larry E. Keenan,* of Great Bend, was with him on the brief for the appellee.

*Mark H. Adams* and *William S. Richardson,* of Adams, Jones, Robinson and Manka, of Wichita, were on the brief *amici curiæ* for the El Paso Natural Gas Company, Natural Gas Pipe Line Company of America, Northern Natural Gas Company.

*Wright W. Crummett,* of Topeka, General Counsel for the League of Kansas Municipalities was on the brief *amicus curiæ.*

*Joseph J. Poizner* and *Dana B. Dodderidge,* of Topeka, Staff Attorneys, were on the brief *amici curiæ* for the State Highway Commission.

*Harry T. Coffman* and *Stephen Jones,* both of Lyndon, were on the brief *amici curiæ.*

The opinion of the court was delivered by

PRAGER, J.: This is an appeal brought by the appellant, Western Power & Gas Co., Inc., from judgments entered in four separate condemnation cases which were consolidated and tried before a single jury. In 1968 Western instituted a condemnation action to acquire easements across certain tracts of land in Barton County, Kansas, for the transmission of electrical energy. Western in taking the easements contemplated the construction of power lines consisting of five wires combined to carry 230,000 volts of electricity. The power lines were suspended on two-pole settings called "H Structures." On March 25, 1968, the court appointed appraisers filed their report assessing damages resulting from the taking of the easements by Western. Appeals were taken from the appraisers' award by four separate sets of landowners to the district court of Barton County. Each appeal involved separately located tracts of land which may be described as follows: Harold C. Schwartz and Geraldine H. Schwartz appealed as owners of a 160 acre tract upon which Western installed four H pole structures. This will be called the Schwartz tract. Wilfred Schartz and Elsie Mae Schartz appealed as owners of a 160 acre tract on which Western installed two H pole structures. This we will call the Schartz tract. Robert W. Mermis appealed as the owner of a 160 acre tract on which Western installed two H poles. This will be called the Mermis tract. Wayne E. Pritchard and Helen Pritchard appealed as owners of an 80 acre tract on which Western installed one H pole structure. This we will call the Pritchard tract. No

other appeals were taken from the award of the condemnation appraisers.

The district court of Barton county entered an order consolidating the four condemnation appeals for purposes of trial and they were all tried together in one jury trial over the vehement objections of Western, the condemning authority. The jury trial of the four consolidated actions took place on December 29, 30 and 31, 1969. The jury brought in a separate verdict in each of the four condemnation appeals. In the Schwartz appeal the original award was $1800 and the jury verdict was $8500. In the Schartz appeal the appraisers' award was $900 which was increased by the jury to $6500. In the Mermis case the original award was $535 which was increased to $2000. In the Pritchard appeal the original award was $400 which was increased by the jury to $1000. Following the jury verdict in each appeal a motion was filed in each case by each landowner asking for an allowance of reasonable attorney fees, expert witness fees and costs incidental to the preparation of the case for trial. Each landowner further moved for interest on the excess of the judgment over and above the original award. The trial court approved the jury verdict in each case, awarded attorney fees to the landowners' attorneys, Keenan and Keenan, in the total amount of $5600 for their services in all four cases and further allowed expenses of litigation over and above statutory costs in the amount of $2497.14. The basis of the trial court's award of attorney fees and expenses of litigation was a finding by the trial court that the landowners were entitled to them by virtue of the constitutional provision prohibiting the taking of property without just compensation. The trial court awarded interest on each of the jury verdicts at the rate of 6% per annum from March 25, 1968, the date the original condemnation award was paid into court by Western, until July 1, 1969, and thereafter at the rate of 8% per annum until the balances owing on each judgment was paid in full.

Western filed a timely appeal to this court in each case complaining of a number of trial errors which will be discussed hereafter, and further objecting to the allowance of attorney fees and expenses of litigation and the allowance of interest at 8% after July 1, 1969. On this appeal the appellant Western urges seven points to be determined by this court.

Western's first point is that the court erred in granting the landowners' motion for allowance of attorney fees and other litigation

expenses and in allowing interest upon the principal judgments at the rate of 8% per annum from July 1, 1969, until paid in full. The trial court awarded a judgment against Western for the landowners' attorney fees in the amount of $5600 and for expenses of expert witnesses and expenses in preparation for trial in the total amount of $2497.14. These allowances were over and above the usual statutory court costs. In this case the trial court and also the appellant and appellees recognize the general rule in Kansas that attorney fees and expenses of litigation other than statutory court costs incurred by a party to an action, are not chargeable as costs against the defeated party in the absence of a clear specific statutory provision therefor. It is further conceded that the Kansas Eminent Domain Statute, K. S. A. 26-501, *et seq.* contains no such provision. (*Gault v. Board of County Commissioners,* 208 Kan. 578, 493 P. 2d 238.) The basis of the trial court's ruling was that the landowners were entitled to recover attorney fees and other expenses of litigation in order to satisfy the guarantee of just compensation under the Fifth and Fourteenth Amendments to the Constitution of the United States and Article 12, Section 4, of the Kansas Constitution. These constitutional provisions prohibit a state from taking private property for public use without the payment of just compensation. At the outset we are faced with the rule of law supported by the overwhelming weight of authority throughout the United States which declares that attorney fees and litigation expenses are not embraced within the concept of just compensation for land taken by eminent domain. In this opinion we employ the term "litigation expenses" in the sense of costs not ordinarily made recoverable by statute. These would include expert witness fees and the multitude of expenses commonly incurred by attorneys in preparing a case for trial such as the cost of exhibits, travel expenses, postage and other incidental expenses of a similar nature. The leading case which recognizes the general rule is *Dohany v. Rogers,* 281 U. S. 362, 368, 74 L. Ed. 904, 50 S. Ct. 299. In 26 A. L. R. 2d 1295 there is an annotation which cites most of the state and federal decisions throughout the country. A recent case where the decisions on this subject are reviewed is *County of Los Angeles v. Ortiz,* 98 Cal. Rptr. 454, 490 P. 2d 1142. A review of the many cases discloses the following arguments for and against the allowance of such litigation expenses in a condemnation proceeding. The primary argument in favor

of the allowance is that the condemner should be required to pay the landowner's attorneys fees and expenses in order to fully compensate him and to make him whole for the loss of his property. It is further urged in support of this position that it is eminently fair to allow litigation expenses because the landowner innocently holds property the government covets and he is thus distinguishable from a defendant wrongdoer in ordinary civil litigation; that the landowner bears the burden of proving the value of his property and is virtually compelled to employ an attorney and expert witnesses in order to establish his claim; and that by compelling the landowner to assume litigation expenses to prove his claim he is required to bear more than his equal share of the financial burden of a public project.

Those opposed to the allowance of attorney fees and litigation expenses in condemnation appeals contend that if such an allowance were made a landowner would be tempted to gamble upon litigation rather than to accept offers of settlement thus greatly increasing the cost to the public of acquiring needed property and placing an added burden upon the judicial process. Furthermore, it is contended that a landowner is in no different position than an innocent victim of an automobile accident or a defective product who may also be compelled to file suit to obtain a fair award of damages, yet in those circumstances the victim of the wrong is not entitled to litigation expenses. Finally it is argued that a governmental agency which needs specific property for a project benefitting the public cannot be deemed a wrongdoer unlike the culpable defendant in a tort case and therefore it would be discriminatory to require the former to pay litigation expenses and not the latter.

In *County of Los Angeles v. Ortiz*, supra, the Supreme Court of California points out as follows:

"In this provocative debate the coloring is not black and white; all but the participants can see shades of grey. There is arguable merit to the equitable concepts advanced by both parties." (p. 1147.)

We, like the Supreme Court of California, are impressed with the authorities which are almost unanimously in agreement that there is no constitutional compulsion to award attorney fees and litigation expenses to a landowner in a condemnation proceeding. The appellee landowners in this case have not offered any persuasive justification for overruling our recent decision in *Gault v. Board of County Commissioners*, supra, and the rule so universally accepted

in other jurisdictions. We hold that the allowance of attorney fees and litigation expenses in condemnation cases is a matter of policy to be determined by the legislature of this state and not a matter of constitutional right. Since admittedly there is no statutory authority for awarding the attorney fees and litigation expenses awarded by the trial court in this case, we hold that the trial court was in error in making an award for these items.

Counsel for the landowners in their brief argue that such a rule will not effectively provide the protection of the courts where the award of the court appointed appraisers is ridiculously low and the amount involved in the case does not justify the expense of an appeal. It is important for the district court in a condemnation proceeding to follow a procedure which will provide as fair and impartial an appraisal and award as is reasonably possible. Under our former condemnation statutes, G. S. 1949, 26-101, and G. S. 1949, 26-201, the condemning authority filed its petition with the district court and the judge in an *ex parte* proceeding examined the petition and thereupon appointed the three appraisers. It was quite common for the condemning authority to supply to the court the names of its own handpicked appraisers who often came in with unusually low awards of damages. The landowners had no opportunity to participate in the selection of appraisers or in the preparation of the court's instructions to them pertaining to their duties. The legislature obviously recognized this evil since it adopted a new Eminent Domain Procedure Act in 1963. By the provisions of K. S. A. 26-501 *et seq.* an eminent domain proceeding is commenced by the filing of a petition in district court and, rather than proceeding with the matter *ex parte,* the court is required to fix a time for the hearing on the petition and is further required to provide notice to the landowners of the date of the hearing for consideration of the petition and appointment of appraisers. At the time set for hearing in the notice the district court is then required by K. S. A. 26-504 to determine from the petition whether the plaintiff has the power of eminent domain and whether the taking is necessary to the lawful corporate purposes of the plaintiff and, if he so finds, enter an order appointing the appraisers to determine the damages to the interested parties resulting from the taking. We think it important that the landowner parties were given an opportunity to appear prior to the appointment of the appraisers so that they might participate in the selection of the

appraisers by suggesting names of appraisers to the court. It should be noted that K. S. A. 26-504 vests in the district court a broad discretion in the appointment of the appraisers. In exercising such discretion the court may appoint appraisers suggested by the condemning authority or appraisers suggested by the landowners, or appraisers not suggested by any of the parties. We think it obvious that the district court should not appoint appraisers suggested by the condemning authority as a matter of course since this was one of the evils which the 1963 Eminent Domain Procedure Act sought to avoid. The important point is that the district court at the time of the original hearing on the condemnation petition should take pains to see that appraisers are appointed who will be impartial and who will seek to make an award of damages which is fair to all the parties concerned. Under K. S. A. 1971 Supp. 26-505 the judge is required to instruct the appraisers to the effect that they are officers of the court and not representatives of the plaintiff or any other party, and that they are to receive their instructions only from the judge. Since at all times both the condemner and the condemnee landowners are allowed to be present and represented, it is clear that the district court may consider their suggestions as to instructions to be given to the appraisers and where appropriate may even suggest the consideration of changes in engineering plans by the condemning authority in order to avoid unnecessary damage to a landowner's tract of land thus avoiding unnecessary public expense. The ultimate goal to be sought is a fair and just award to protect the rights of all parties in order to avoid unnecessary appeals and unwarranted expenses to any of the parties involved.

We turn now to the question of the allowance of interest on the judgment awarded the landowners in each case. In determining this issue we encounter two conflicting statutes covering the question of interest on judgments. The parties are in agreement that the difference between the original award and the amount awarded by the jury in each case should bear interest at 6% from March 25, 1968, when the original amount was paid in by Western until July 1, 1969. The dispute arises as to the rate of interest which each judgment should bear from July 1, 1969, and thereafter until each judgment is paid. July 1, 1969, was the effective date of K. S. A. 1971 Supp. 16-204 which provides:

"All judgments of courts of this state shall bear interest from the day on which they are rendered, at the rate of eight percent (8%) per annum, *except as otherwise provided.*" [Emphasis supplied.]

The former statute K. S. A. 16-204 provided:

"All judgments of courts of record and justices of the peace shall bear interest from the day on which they are rendered, at the rate of six percent per annum, except as *herein* otherwise provided." [Emphasis supplied.]

Since K. S. A. 16-204 was found in Chapter 16, Article 2, of the Kansas Statutes pertaining to the subject of Interest, the statute as it read prior to the amendment in 1969 would have to be interpreted as stating in effect that all judgments would bear interest at 6% per annum except as they might be limited by other sections of Article 2, Chapter 16. The new statute K. S. A. 1971 Supp. 16-204 eliminates the word "herein" and had the effect of broadening the exception to include any statute which might be found anywhere in the Kansas statute books. Such an exception to the operation of K. S. A. 1971 Supp. 16-204 is found in the Eminent Domain Procedure Act at K. S. A. 26-511 which section provides for interest as follows:

"If the compensation finally awarded on appeal exceeds the amount of money previously paid to the clerk of the court, the judge shall enter judgment against the plaintiff for the amount of the deficiency with interest thereon at the rate of six percent (6%) per annum from the date of the payment to the clerk to the date of payment of the deficiency judgment. If the compensation finally awarded on appeal is less than the amount paid to the clerk of the court by the plaintiff the judge shall enter judgment in favor of the plaintiff for the return of the difference, with interest at the rate of six percent (6%) per annum from the time payment was made to the clerk to the date of the judgment."

It should be noted that K. S. A. 26-511 applies where the damages awarded on appeal are less than the amount of the original award as well as in cases where the damages allowed by the jury are more than the amount of the original award. In both situations interest at the rate of 6% per annum is applied. We hold that K. S. A. 26-511 is one of the statutory exceptions contemplated by K. S. A. 1971 Supp. 16-204 and that in condemnation cases interest at the rate of 6% is to be allowed by the court rather than the 8% interest provided in K. S. A. 1971 Supp. 16-204. Such a conclusion is also consistent with the rule of statutory construction that a specific statutory provision controls over a general statutory provision covering the same subject matter. (*Harris v. Shanahan,* 192 Kan. 629, 390 P. 2d 772.) From what has been said it follows that the trial court was in error in granting interest at 8% per annum on each judgment after July 1, 1969. The proper rate of interest to be applied is 6% per annum.

As its second point on this appeal Western contends that the trial court erred in consolidating the four cases for trial before a single

jury. The trial court consolidated the four cases on its own motion under the authority of K. S. A. 1971 Supp. 60-242 (*a*) which reads as follows:

"When actions involving a common question of law or fact are pending before the court, in the same county, or in different counties, in the judicial district, the judge may order a joint hearing or trial of any or all of the matters in issue in the actions; he may order all the actions consolidated; and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

K. S. A. 1971 Supp. 60-242 (*a*) is substantially identical to Rule 42 of the Federal Rules of Civil Procedure. It has been stated that the purpose of Rule 42 is to give the court a broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties. (Wright & Miller, Federal Practice & Procedure: Civil § 2381.) The consent of the parties is not required. It is for the court to weigh the saving of time and effort that consolidation would produce against any inconvenience, delay or expense that it would cause. (Wright & Miller, Federal Practice & Procedure: Civil § 2383.) The statute provides that actions may be consolidated where they involve "a common question of law or fact." In the case at bar each of the four condemnation appeals arose out of a common condemnation action instituted by the appellant Western. All of the landowners were represented by the same law firm. In each of the four condemnation appeals the same expert appraisers were used by the landowners and the condemning authority. The landowners' interest taken in each case was identical in nature with the others. Each of the four tracts involved was cultivated agricultural land. Three tracts consisted of 160 acres and one tract was 80 acres. All the tracts were located in Barton County. A common question in each case was the extent of the damages resulting to agricultural land as a result of the taking of an easement for an electrical transmission line. We hold that the actions involve common questions of law and fact within the meaning of K. S. A. 1971 Supp. 60-242 (*a*). The question of consolidation of actions under K. S. A. 1971 Supp. 60-242 (*a*) is a matter which lies within the sound discretion of the trial court. (*Aspelin v. Mounkes,* 206 Kan. 132, 476 P. 2d 620.) This statute should be liberally construed to achieve the end sought. In exercising its discretion the court should carefully consider all the facts and circumstances and either consolidate the actions or deny consolidation in accordance with the

demands of justice. Here the original awards of the appraisers in the four condemnation cases were in the amount of $400, $535, $900 and $1800. It is clear that by consolidation of the four cases for trial the saving of time and expense would be substantial in view of the low monetary awards made by the court appointed appraisers. It is questionable whether it would have been economically feasible for the landowners to have tried each case separately. Under all the facts and circumstances we hold that the trial court did not abuse its discretion in ordering consolidation of the four cases for trial and we find no error therein.

In its third point appellant Western contends that it was error for the trial court to deny Western's request for a view of the four tracts by the jury. The rule is well established in Kansas that whether or not the jury should be permitted to view the premises is a matter resting in the sound discretion of the district court. (K. S. A. 1971 Supp. 60-248 [b]. *Dibble v. State Highway Commission*, 204 Kan. 111, 460 P. 2d 584.) In this case the record discloses a large engineering diagram for each tract drawn to scale showing the location of the easement and the electrical transmission line. In addition the jury had before it fifteen 8″ x 10″ photographs of the tracts in question. Some of the photographs were aerial photographs and others were taken from the ground level. The court exercised its discretion in refusing the request of Western for a view of the tracts by the jury. We find no abuse of discretion has been established here.

The appellant Western contends that the trial court erred in failing to give to the jury certain instructions requested by the appellant. One instruction involved the Schartz property and was as follows:

"You are instructed that Wilfred Schartz does not own the working interest in the oil and gas lease applicable to his tract and therefore as long as there is oil production from the Schartz tract, said oil and gas lease remains in effect and Schartz does not have the right to remove any pumping equipment, lease roads, or tank batteries from the land. You are further instructed that as long as there is oil production from the Schartz tract and said oil and gas lease remains in effect, Schartz does not have the right to make any changes whatsoever in the surface of the Schartz tract or do anything which would violate any of the terms of said lease, including any act by Schartz which would prevent or hinder the exploration, mining, production, collection, or distribution of oil or gas from his land or the entering upon or departing from the land."

Another requested instruction involved the Schwartz property:

"You are instructed that if there is any oil or gas under the Harold Schwartz land it belongs to others and not to Schwartz for at least 50 years from June

14, 1958. You are further instructed that any and all rights to explore, mine, produce, collect, distribute oil or gas or go upon or leave the Schwartz land, as well as the doing of all things necessary or incident to the said production of oil or gas (including the construction of lease roads, tank batteries, and other structures) belong to others and not to Schwartz for at least 50 years from June 14, 1958. You are instructed this means that for at least 50 years from June 14, 1958, Schwartz will therefore not have the right to make any changes whatsoever in the surface of the Schwartz tract or do anything which would prevent or hinder any act necessary or incident to the exploration, mining, production, collection, or distribution of oil or gas, including preventing or hindering the going upon or leaving the land for such purposes or the construction of lease roads, tank batteries, or other structures."

The trial court refused to give these two instructions on the grounds that they were "slanted" instructions. In recent years certain basic principles have been accepted as guides in drafting jury instructions. The first of these principles is that the instructions should be impartial, accurate statements of the law and drawn with careful attention to supporting authorities. The second principle is that instructions should be stated in brief, simple language that would be clear and understandable to laymen. The third principle is that they should be general instructions adaptable to varying circumstances. Instructions should be avoided that are slanted, argumentative, or formulated to particularize one aspect of a case. These principles are discussed in the preface to Pattern Instructions for Kansas (PIK-Civil). We have held heretofore that a court should not single out a particular theory or circumstance and give it undue emphasis, even though the requested instruction correctly states the law. (*Kettler v. Phillips*, 191 Kan. 486, 488, 382 P. 2d 478.) Jury arguments should be left to the summations of counsel. The requested instructions quoted above obviously singled out portions of the evidence and in effect argued and emphasized the theory of the appellant. The refusal of the trial court to give them was not error.

Western further urges as trial error the failure of the court below to give the following instruction requested by appellant:

"You are instructed that the fear of a remote and contingent injury which may possibly occur because of the presence of the easement for the transmission line, and the maintenance of the transmission line thereon, the happening of which is remote, speculative and uncertain and merely possible, including accidents, actions of the elements, and acts of God, over which the defendant has no control cannot form the basis for allowance of damages in these cases and should not be considered by you in determining the amount of any award."

In lieu thereof the court gave Instruction No. 9 in which the court instructed the jury that in arriving at the market value of the land and the interest taken, its considerations must not be speculative, conjectural or remote. The general instruction to the jury that its considerations must not be speculative, conjectural or remote was sufficient to cover the specific matters contained in Western's requested instruction and we find no error here.

The last point raised on this appeal by Western is that the trial court erred in refusing to grant a new trial and in refusing to reduce the amount of the award notwithstanding the verdict of the jury because the verdicts were influenced by passion and prejudice and not supported by substantial competent evidence. A review of the record discloses that the verdict in each of the cases was clearly within the range of the testimony of the expert witnesses who testified for the parties. As in many condemnation cases the jury took the middle ground. We hold that the verdict in each case was supported by substantial competent evidence.

For the reasons set forth above the judgment of the trial court in each case is reversed as to the allowance of attorney fees, expenses of litigation and the allowance of interest on the judgment at 8% per annum rather than 6% per annum after July 1, 1969. In all other respects the judgments are affirmed.

It is so ordered.