(745 P.2d 309)
No. 59,971

ROBERT S. HAZELTON, *Appellant,* v. SAFEWAY STORES, INC.,
*Appellee.*

Opinion filed
November 5, 1987.

*Steven L. Foulston,* of Wichita, for the appellant.

*Steven R. Smith* and *Linda S. Parks,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for the appellee.

Before BRISCOE, P.J., HARRY G. MILLER, District Judge Retired, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: Robert S. Hazelton brought a strict liability suit against Safeway Stores, Inc., claiming he swallowed a needle that was in bread baked and retailed by Safeway. He now claims three errors in the trial caused the jury to reach a verdict for the defendant. Timely objections were made in the trial court as to each ruling that Hazelton claims was erroneous.

Hazelton alleges (1) the trial court erred in instructing the jury that he had the burden of proving the needle was in the bread when "manufactured" instead of "at the time of sale" as speci-

fied in the pretrial order; (2) it was error for the trial court to permit the jurors to inspect several hundred pages of Hazelton's old medical records, records he says were prejudicial to him but devoid of any probative value as to any factual issue; and (3) it was error for the trial court to allow the jury to watch Safeway's videotape presentation, with running commentary, of what it claimed was its process of baking, slicing, wrapping, and testing for metal contamination. He claims the law prohibits such evidence in a strict liability action because the exercise of due care is no defense and thus not relevant. The claims of error will be addressed in the order listed.

First, however, a narrative of the evidence is necessary to understand the issues. Safeway mixes the components of what it sells as Mrs. Wright's sandwich wheat bread at its Kansas City bakery. The testing for metal contamination is done after the bread is baked, sliced, and wrapped. The bread that Hazelton ate was taken from the bakery to a Safeway truck, transported to a Wichita Safeway store, carried into the store, and shelved.

On September 27, 1983, Hazelton's wife had asked her father to do her grocery shopping. He drove to the Safeway store, took the loaf of bread from the shelf to the cashier counter, and purchased it. The bread was sacked and carried to his car. The father then transported it to Hazelton's home.

Hazelton is a heavyweight boxer who eats a lot of food. He had an evening meal, but asked for something to eat again about three hours later. Hazelton's wife prepared and served him a glass of iced tea and two sandwiches, each consisting of an egg, mayonnaise, and two slices of bread. Up to this time, no one handling the bread had seen any pin or needle in it nor noticed any hole in the wrapper or other irregularity. Upon eating the second sandwich—the seventh and eighth slices of the bread he had eaten since it was delivered—something sharp scratched his mouth and Hazelton extracted a common pin. He asked his wife to phone and report this to the police, which she did. The next afternoon he had stomach cramps and pain and did not eat an evening meal. He saw blood in the stool from an evening bowel movement, his first since eating the bread, and awakened sick the next morning vomiting blood. The following morning x-rays were taken revealing his duodenum contained a needle, which his doctor surgically removed.

## The Jury Instructions

Turning now to the court's instruction as to the step at which Hazelton needed to prove the needle was in the bread, it seems that neither the court nor counsel ever settled upon the correct step: "the time it left the defendant's control." *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348 (1983); PIK Civ. 2d 13.22. This would have been when the sacker delivered the bread to the car.

In his petition, Hazelton stated the bread "was manufactured in a defective condition in that it contained a needle and pin." The pretrial order expands his allegation to be that the needle "was introduced into the loaf prior to sale." An additional expansion is reflected in another place in the order where it recites he "alleges that the pin and needle were in defendant's bread when the bread left defendant's control." If, from all of this, Safeway's obligation is measured by "prior to sale" or "leaving defendant's control" and the jury instructions as to Safeway's obligations are more limited than either, the instructions are in question because the pretrial order controls the trial unless later modified. See *Querry v. Montgomery Ward & Co., Inc.*, 217 Kan. 104, 535 P.2d 928 (1975). The record shows no modification. To the contrary, the trial judge advised counsel that, in his introductory remarks, he would advise the jury that Hazelton claimed a sewing needle "was contained in a loaf of bread manufactured by defendant and which was introduced into the loaf of bread prior to sale."

Excerpts from five jury instructions refer to either Hazelton's claim or Safeway's obligation: No. 7—"Plaintiff claims that the needle was in the loaf of bread before it was wrapped"; No. 9—"free from any unwholesome material as of the time of manufacture"; No. 10—"If you find that the needle was in the bread as of the time of manufacture"; No. 11—"at the time it leaves the manufacturer's hands"; and No. 12—"as of the completion of the manufacturing process."

Only instruction No. 11 approaches a correct instruction in conformance with the pretrial order. Using the term "manufacturer's hands" more closely suggests the baking process than the full range of Safeway's obligation. Nonetheless, the total in-

structions show such ambiguity that they cannot meet the test of "impartial, accurate statements of the law" as mandated by *Schwartz v. Western Power & Gas Co., Inc.,* 208 Kan. 844, 854, 494 P.2d 1113 (1972). Further, the instructions would seem to be instructions that more reasonably would mislead the jury than instructions that could not reasonably mislead them. See *Bechard v. Concrete Mix & Construction Inc.,* 218 Kan. 597, 600-01, 545 P.2d 334 (1976). Whether we are correct in this conclusion is not material because the instructions are required to state the law as applied to the facts. *Allman v. Holleman,* 233 Kan. 781, 785, 667 P.2d 296 (1983).

Safeway calls upon a purported stipulation and K.S.A. 1986 Supp. 60-216(a) to evade the otherwise binding effect of the pretrial order. The statute provides that, at pretrial, the court may make an order limiting trial issues to matters "not disposed of by admissions or agreements of counsel." It further provides the order may recite the agreement. But no such order was made nor were any relevant agreements recited. While the trial court may well have been misled by statements made by Safeway's counsel as to a supposed stipulation, we find no meritorious basis for a claim Safeway makes that Hazelton stipulated he must prove the needle was in the bread when baked.

The purported stipulation was made in connection with Hazelton's intent to call an expert who in a deposition had opined the needle was in the bread when it was baked. Safeway's counsel wanted assurance the opinion would not be changed at the time of trial. Hazelton's counsel said that, if the expert changed his view because of something new being developed by Safeway, he would give adequate notice. During Hazelton's deposition, there was this additional exchange between counsel as to the opinion of the expert, Ron Wells:

"[Safeway's counsel]: [I]t's my understanding from Ron Wells' report that your contention is that the needle and pin were in the loaf of bread before it was wrapped, is that correct?

"[Hazelton's counsel]: That's his expert opinion. Mr. Wells' expert opinion.

"[Safeway's counsel]" Mr. Wells. Okay. Okay.

"[Hazelton's counsel]: And I think his report reflects that."

We see no more in all of this than comments upon what the expert would opine. While it might suggest that Hazelton would

center upon the needle most likely entering the bread in the baking process, it constituted no stipulation that he would limit the possibilities to that in his other evidence. When the court's instructions limited the extent of Safeway's control that the jury could consider, it committed reversible error.

## Medical Records

We consider Hazelton's claim of error in submitting hundreds of pages of medical records as now moot. At oral argument before us, Safeway stipulated that, in case of retrial, it would only request submission of those records relating to the operation to excise the needle plus some portions of others which indicated a difference between the number of times Hazelton had been in hospitals as compared to the number of times he had so related in a deposition.

## Evidence of Testing for Metal Contamination

With reversal for new trial required, we address this issue because of the novelty of the factual background as it relates to evidence of testing, and because it may be helpful on retrial.

To support his claim of error in allowing Safeway's evidence of metal contamination testing to go to the jury, Hazelton relies upon *Cernes v. Pittsburg Coca Cola Bottling Co.*, 183 Kan. 758, 332 P.2d 258 (1958), and *Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P.2d 633 (1957) (Cola Cases). While not the only soft drink cases that have come before our Supreme Court, they are the only ones which are somewhat relevant here. The Cola Cases were brought on the theory of implied warranty of fitness for use and, as noted by Hazelton, they held that evidence of due care in the preparation and bottling process was not admissible. See *Cernes*, 183 Kan. at 763; *Simmons*, 181 Kan. at 39.

While in *Cernes* the defendant questioned that the contaminant, particles of a kola nut, entered the bottle during its processing, there was direct evidence that the contaminant was in the bottle. Likewise, in *Simmons*, there was direct evidence that the contaminant, a match book, was in the bottle. Safeway maintains that the Cola Cases are materially distinguishable from this case because no one saw the needle in the bread. Therefore, it contends the evidence was properly admitted as tending to prove the needle was never in the bread.

We consider it to be of no consequence that this action proceeded on the theory of strict liability of one who prepares and sells a food product, a tort action, rather than the theory of implied warranty of fitness for consumption as in the Cola Cases. Strict liability was adopted by our Supreme Court in *Brooks v. Dietz*, 218 Kan. 698, 699-703, 545 P.2d 1104 (1976), after such adoption was forecast by *Symons v. Mueller Company*, 493 F.2d 972 (10th Cir. 1974) and PIK Civ. 13.21 (1975 Supp.). *Brooks* adopted the doctrine of Restatement (Second) of Torts § 402A, imposing liability on a seller of a product that is defective and dangerous to a user even though "the seller has exercised all possible care in the preparation and sale of his product."

Hazelton contends the evidence of testing had to have the effect of suggesting an unstated and erroneous defense for Safeway, namely, the exercise of due care. Perhaps this suggestion could have been blunted by a simple, and we believe advisable, limiting instruction stating in substance: "This evidence is being allowed only as having a possible bearing upon whether the needle was in the loaf at the time of testing and not at any time thereafter. You should give no thought to the fact that the evidence might suggest care on the part of Safeway, as that is no defense. If you find the needle was in the loaf when it left Safeway's control, it is liable no matter how much care it used." The record reveals the trial court correctly considered a limiting instruction, but none was given.

Evidence of care in the manufacturing process was found proper for admission in *Timsah v. General Motors Corp.*, 225 Kan. 305, 591 P.2d 154 (1979), but in that case the plaintiff relied upon both strict liability and negligence. Evidence of care was held proper to rebut the negligence claim but not admissible to counter the theory of strict liability. Thus, that case cannot be relied upon to support Safeway's position.

A bottling company's introduction of evidence of care was approved in *Butterfield v. Pepsi-Cola Bottling Co.*, 210 Kan. 123, 124-25, 499 P.2d 539 (1972), but the case furnishes no support for Safeway's position because the plaintiff in *Butterfield*, while lodging an objection to the witness' qualifications, failed to object to the witness' testimony concerning defendant's proc-

essing. The cases from our Kansas Supreme Court appear to give direction, as in the Cola Cases, when there is direct evidence that harmful material was in food. When, as here, that evidence is circumstantial only, we can rely upon *Mays v. Ciba-Geigy Corp.*, 233 Kan. at 54, for the principle that, if a plaintiff's circumstantial evidence sufficiently negates other possible causes so that his claim has "an inference of probability as distinguished from mere possibility," the plaintiff has a prima facie case in a strict liability suit. The question of a defendant's right to admit evidence of manufacturing, processing, or testing techniques, however, does not appear to have been raised in our appellate courts when a plaintiff's evidence is circumstantial only.

A federal court case, ruling in a way the court believed our Kansas Supreme Court would rule, and an Arizona Court of Appeals case suggest an answer. In *Ray v. J.C. Penney Company*, 274 F.2d 519 (10th Cir. 1959), the introduction of manufacturing experience was approved where the plaintiff claimed injury from the components of gloves she bought from the defendant. The evidence was that, in the processing technique, many workers handled the gloves at the leather company without ill effect. The defendant claimed the plaintiff's hands were so unusually sensitive that injury was not foreseeable. We note this evidence was expressly limited as relating only to show how many workers handled the gloves without injurious results.

*Brown v. General Foods Corp.*, 117 Ariz. 530, 573 P.2d 930 (1978), approved the introduction of the manufacturer's quality control procedures in a suit where the plaintiff claimed he was penicillium fungi poisoned from a banana peel in a cereal box and utilized both theories—implied warranty and strict liability. One basis for approval of this evidence would seem to be a desire to apportion equality in the introduction of evidence:

"The courts have recognized that a plaintiff may have to rely on circumstantial evidence to prove the existence of a defect in product liability cases. [Citation omitted.] Likewise, circumstantial evidence is admissible on a defendant-manufacturer's behalf if the admission of such evidence makes it appear more probable than it would otherwise appear without such evidence that the product in question did not contain the claimed defect when it left the defendant's control. [Citations omitted.]" 117 Ariz. at 533.

While adoption of this fairness doctrine would not seem in-

judicious to us, and while it was expressly allowed as not relating to due care, the basic relevance was stated to be "the improbability of the defect as alleged by the plaintiff." 117 Ariz. at 534. We would question our authority to approve the allowance of such evidence as evidence relating to plaintiff's credibility. We assume, in fact, that in our state the evidence might not be admissible because plaintiff testified he *found the peel in the box*. It follows that *Cernes* would proscribe such admittance. But the Arizona court rejects the ruling in *Cernes* as "arbitrary and illogical, and contrary to well-established principles of law governing the admissibility of evidence." 117 Ariz. at 532-33.

We observe that the Arizona court needed to reject the holding in *Cernes* in order to hold the defendant's processing evidence admissible because in each of those cases the plaintiffs testified they saw the contaminant in the product. We, however, are not called upon to express any view as to the reasonableness of the holding in *Cernes* because we find *Cernes* is not applicable. Our reasoning, assuming the needle was in the bread, is based on the following: (1) No one saw it in the bread; (2) while it might have entered during Safeway's control, it also might have entered while on the car seat or in the home; thus, (3) *Cernes* is not in point as to facts.

Now we come to the final basis on which the Arizona court finds admissibility, the prevailing law of admissibility of evidence as soon thereafter codified in Rule 401 of the Arizona rules of evidence:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. Rev. Stat. Ann. (1986 Supp.).

Five years after *Cernes* was decided, our Kansas rules of evidence were codified (L. 1963, ch. 303, Sec. 60-401 *et seq.*). K.S.A. 60-401(b) defines "relevant evidence" as evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(c) defines "proof" as all evidence before the trier of fact relevant to a fact in issue which tends to prove the existence or nonexistence of such fact. K.S.A. 60-402 provides the rules are to apply "in every proceeding" unless "relaxed by other procedural rule or statute applicable to the specific situation." We find no

such procedural rule or statute and K.S.A. 60-407(f) states that "all relevant evidence is admissible."

We detect no difference in meaning between our present rules and the Arizona rule and conclude that our rules now make the circumstantial evidence of a defendant's testing procedure admissible when the plaintiff's case is supported by circumstantial evidence only. This would appear to conform with the holding in *Divine v. Groshong,* 235 Kan. 127, 130, 679 P.2d 700 (1984):

"We start with the premise that the evidence, if relevant, is admissible. This is true unless some statute or constitutional provision mandates its exclusion."

In conclusion, we note that the requirement of an instruction when evidence is allowed for a limited purpose is set forth in K.S.A. 60-406. Also, in the hope that this opinion will not be construed more broadly than we intend, we repeat an observation made by the Arizona court:

"We can hypothesize a fact situation in which, by reason of the intrinsic nature of the defect and the impossibility of its occurrence other than in the manufacturing process, evidence of the manufacturer's quality control procedures would not be relevant and therefore would be inadmissible." *Brown v. General Foods Corp.,* 117 Ariz. at 534.

Reversed and remanded for a new trial.