UNITED STATES of America, Plaintiff,

v.

**1,197.29 ACRES OF LAND, MORE OR LESS, SITUATE IN BUTLER COUNTY, STATE OF KANSAS, and Frank Barrett, and Unknown Owners, et al., Defendants.**

Civ. A. No. 86–1537.

United States District Court,
D. Kansas.

March 7, 1991.

Michael G. Christensen, U.S. Attorney's Office, Wichita, Kan., for plaintiff.

O.J. Connell, Jr., Connell & Connell, El Dorado, Kan., Charles W. Cather, Wichita, Kan., for defendants.

James A. Bartle, Legal Services Bureau, Kansas Dept. of Revenue, D. Philip Wilkes, Collections Legal Bureau, Kansas Dept. of Revenue, Topeka, Kan., Lyndon Gamelson, Wichita, Kan., for claimants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This land condemnation case was tried to the court on November 6, 1990. The court heard the testimony of five expert witnesses and received several exhibits into evidence. The court has received and reviewed the trial transcript and the parties' post-trial submissions. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

## INTRODUCTION

On June 18, 1986 the United States commenced this condemnation case by filing a Declaration of Taking, 40 U.S.C. § 258a. The United States acquired all outstanding right, title and interest in a parcel of land containing 1,197.29 acres, more or less, in Butler County, Kansas (hereinafter referred to as Tract 207) for the El Dorado Lake Project (the Project). The Flood Control Act of 1965, approved October 27, 1965, Public Law 89–298, 89th Congress, 1st Session, authorized the construction, operation and maintenance of El Dorado Lake on the Walnut River in Kansas. At that time the City of El Dorado, Kansas was the holder, by virtue of two condemnation actions and numerous purchases, of certain interests in land on which it had constructed and was operating and maintaining water storage and conveyance facilities, including and relating to Lakes El Dorado and Bluestem. The City's water storage and conveyance facilities interfered with the development and use of the Project by the United States. This action concerns only those lands acquired by the City through condemnation, collectively known as Tract 207.

By a Contract for Water Storage Space in El Dorado Lake, dated June 30, 1972, the City of El Dorado agreed to convey to the United States all of its right, title and interest in and to the reservoir lands and appurtenances comprising existing Lakes El Dorado and Bluestem. In return, the City would receive a permanent right to the use of water storage space in the Project. Pursuant to the terms of the contract, by a deed dated July 25, 1984, recorded August 20, 1984 in Book 376, Page 214 of the land records of Butler County, Kansas, the City of El Dorado conveyed to the United States the lands described herein as Tract 207, subject to the reversionary interest outstanding in third parties, if any.

On June 18, 1986, this action was initiated to secure in the United States all outstanding right, title and interest in Tract 207. Notice was given to all purported owners, several of whom filed answers claiming they are the owners in fee simple of various interests in Tract 207.

In a prior order, the late Judge George Templar of this District found that the City of El Dorado obtained only an easement by its two condemnation actions. The owners

of the property on which the easement was imposed retained the fee simple title including all mineral rights in their property. Findings of Fact and Conclusions of Law, April 19, 1988, Doc. 45.

## FINDINGS OF FACT

1. The United States deposited the sum of One Dollar ($1) into the registry of the court as the amount of the estimated compensation for the land taken. Doc. 2.

2. The value of the fee surface estate unburdened by the easement for the lake was $1,045,000.00 on the date of taking. Pretrial Order, Doc. 59, stipulation A.

3. The easement in favor of the City of El Dorado would have existed as long as the land in Tract 207 was used for lake purposes. Once the land ceased to be used for lake purposes, the property would revert back to defendant landowners.

4. Lake Bluestem covered Tract 207 at the time of the taking. Tr. 81.

5. Lake Bluestem had an annual rate of silt deposition of approximately 45 acre-feet per year from 1981 to 1989. Tr. 83.

6. In 1970 there was approximately 10,750 acre-feet of storage in Lake Bluestem. Tr. 81.

7. Lake Bluestem would not have silted in for in excess of 100 years. Tr. 83.

8. The El Dorado Lake Project had an approximate annual rate of deposition of 297 acre-feet per year for the years 1981 through 1989, based on Army Corps of Engineers surveys. Govt. Exh. 2; Tr. 74.

9. At the rate of deposition of 297 acre-feet per year, the reserve storage space (the amount of storage not needed for project purposes and available for deposition, Tr. 75) would not have silted in for over one hundred years. After the reserve storage was used, the Lake Project would continue to operate as a water storage project. Tr. 75–76.

10. The capacity of the conservation pool (the level at which the lake is normally maintained for water storage, Tr. 71) was 161,928 acre-feet in 1989. Tr. 72. At the rate of deposition of 297 acre-feet per year, the conservation pool would not silt in for over one hundred years.

11. The El Dorado Lake Project was designed for a one hundred year economic life. Tr. 73.

12. The 96 year useful life figure employed by the government's appraiser, measured from the date of taking, is reasonable. The court rejects the 67 year useful life figure employed by the landowners' appraiser, since that figure is not supported by any survey data.

13. The present value of the landowners' reversionary interest, based on a 96 year life from the date of taking, is: $61,198.77 at a 3% discount rate; $24,205.59 at a 4% discount rate; $9,659.25 at a 5% discount rate; and $3,888.24 at a 6% discount rate. Tr. 108, 118, 122.

14. The government's appraiser used a 6% discount rate to reflect the average rate of return available to an investor in a certificate of deposit. Tr. 107.

15. The average rate of return for Butler County farmland is approximately 3½% to 4%, according to the government's appraiser. Tr. 121.

16. The landowners' appraiser used a 3% discount rate to reflect the overall average rate of return for Butler County farmland. Tr. 157–58.

17. The landowners' expert geologist testified that the value of the limestone in place on the date of taking was approximately $100,000 to $150,000. Tr. 134. The witness admitted, however, that he was not an expert on limestone and that thirty minutes before he testified, he did not have an opinion on the value of the limestone in place. Tr. 135. The landowners' expert geologist did not conduct a detailed study of the limestone under Tract 207 and was unaware of any quarrying activities on Tract 207. Tr. 136. The witness was unaware of the demand for limestone in the El Dorado area and assumed that the existing quarries were supplying the current demand. Tr. 145–46.

18. The government's expert petroleum engineer testified that he did not consider limestone or other surface minerals as a

part of his mineral appraisal report, since the value of limestone is generally considered in the value of the surface rights. Tr. 27–28. The value of limestone deposits is included with the value of the surface rights because mining limestone will destroy the surface of the property. Tr. 55–56.

19. The government's appraiser testified that the existence of limestone on the property had no effect on his appraisal. In the Butler County area, limestone is not a limited commodity. In his opinion, the presence of limestone would add no additional value to the land. Tr. 168–69.

20. Both the government's petroleum engineer and the landowners' geologist used the lease bonus method for determining the value of the oil and gas, since Tract 207 was a nonproducing property. Under the lease bonus method, an income stream can be computed from lease bonuses and annual rentals over a ten year period. Tr. 21. Both witnesses used a $5 lease bonus for the first year and a $1 annual rental for the next two years, per acre. Govt. Exh. 4; Defendants' Exh. B.

21. The government's expert discounted the amounts for each lease year after the first by a speculative interest rate of 15% to reflect the risk of nonrenewal of the lease following the initial three year term. Tr. 21.

22. After discounting, the government's expert arrived at a figure of $15 per acre, or a total of $18,000 for the minerals in place. Tr. 21–24.

23. The government's expert then discounted this figure by 90% to reflect the diminished value of the minerals which were beneath the original City lake. Tr. 24–27. The 90% figure was the witness' subjective opinion as to the deterrent effect of the increased costs and risks associated with directional and horizontal drilling, which must be used to drill under a lake. Tr. 48–51, 53–54.

24. The government values the mineral interest on the date of taking at $1,800.

25. The landowners' geologist did not discount the lease bonus and rental amounts; rather, he added interest to arrive at a figure of $25 per acre, or a total of $29,932.25. Tr. 128–31.

26. The landowners' geologist did not discount this figure further to reflect the presence of the lake. The witness reasoned that, in view of the fact that the mineral owners had retained the mineral interest, there was no subordination of the mineral rights at the time of condemnation. Defendants' Exh. B.

27. The landowners value the mineral interest on the date of taking at $29,932.25.

28. The government leased Tract 207 to a third party lessee and received lease payments of one dollar per acre per year for five years, for a total of $5,990 ($1 per acre per year $\times$ 5 years $\times$ 1,197.29 acres).

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1358.

2. The court has personal jurisdiction over the individual landowners.

3. Venue is proper in this district. 28 U.S.C. § 1403.

4. The relevant statutory provision provides in pertinent part:

Upon the filing [of] said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute ... shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest in accordance with section 6 of this Act on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so

much thereof as shall have been paid into the court.

40 U.S.C. § 258a.

■ 5. The court finds that a 3.5% discount rate is the most credible and most appropriate rate to use, since that reflects the average rate of return on Butler County farmland. The government shall compute the value of the fee surface estate burdened by the easement on the date of the taking using this 3.5% discount rate and shall provide the court with a journal entry of judgment.

■ 6. The quantity of minerals in place is important in arriving at an opinion as to fair market value. A qualified witness may give his opinion of the value of the property, but, "to have probative value, that opinion or estimate must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption. It must have a rational foundation." *United States v. 179.26 Acres of Land in Douglas County, Kan.*, 644 F.2d 367, 372 (10th Cir. 1981) (quoting *United States v. Sowards,* 370 F.2d 87, 92 (10th Cir.1966)).

■ 7. Some speculation and uncertainty is inevitable in determining the value of minerals in place. *United States v. 2,560.- 00 Acres of Land in Washington County, Okla.,* 836 F.2d 498, 504 (10th Cir.1988).

8. In the absence of comparable land or mineral interest sales, it is appropriate to use a net income approach to estimate the profit a mineral interest could yield over a period of time. *2,560.00 Acres of Land,* 836 F.2d at 504.

9. A net valuation calculation for limestone has been upheld when the expert witness estimated the potential income from the sale of the limestone over a period of time, discounted that income to its present value, and considered the amount and value of the limestone underlying portions of the property, the local demand for limestone, and possible production costs in extracting the limestone from the quarry. *Id.* (discussing *United States v. 179.26 Acres of Land in Douglas County, Kan.,* 644 F.2d 367 (10th Cir.1981)).

■ 10. The limestone in place on Tract 207 has no value above the value of the fee surface estate. The landowners' expert was unable to give an estimate of potential income over a period of time, discounted to its present value. The witness was unaware of the amount and value of the limestone under Tract 207, the local demand for limestone, and the production costs of quarrying limestone.

■ 11. The value of the oil and gas in place shall be based upon the actual value of the lease payments paid to the government. The figure of $5,990 reflects the actual value of the lease payments over the five year period of the lease.

12. The court shall use a ten year income stream, since both experts used a ten year income stream in valuing the mineral interest using the lease bonus method.

13. The total value of the mineral interest on the date of taking burdened by the lake was $11,980 ($5,990 × 2).

■ 14. Interest shall be awarded on the amount of the award in excess of the $1 deposit into court. Interest on the award of compensation shall be calculated as follows:

(1) Where the period for which interest is owed does not exceed one year, interest shall be calculated for such period from the date of taking at an annual rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of 52 week United States Treasury bills settled immediately before the date of taking.
(2) Where the period for which interest is owed is more than one year, interest for the first year shall be calculated in accordance with paragraph (1) and interest for each additional year shall be calculated on the combined amount of the principal (the amount by which the award of compensation exceeds the deposit referred to in the first section of this Act) and accrued interest at an annual rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted

auction price for the last auction of 52 week United States Treasury bills settled immediately before the beginning of each additional year.

40 U.S.C. § 258e–1. The Director of the Administrative Office of the United States Courts distributes notice of these rates to all federal courts. *Id.* The court shall order the government to compute the interest due on the award and to include this figure in the journal entry of judgment.

15. Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party." Fed.R.Civ.P. 54(d). Since the government is normally the prevailing party and since the government should not recover its costs against the property owner, Rule 54(d), which provides that costs shall be awarded to the prevailing party, is made inapplicable to eminent domain proceedings. Fed.R.Civ.P. 71A, advisory committee note. Costs in eminent domain actions are not subject to Rule 54(d). *See* Fed.R.Civ.P. 71A(*l*). Costs may not be taxed against the United States except to the extent permitted by law. *Id.* advisory committee note.

16. Under the Equal Access to Justice Act (EAJA) and except as otherwise specifically provided by statute, a judgment for costs may be awarded to the prevailing party in any civil action brought by the United States. 28 U.S.C. § 2412(a).

17. Defendant landowners are entitled to their costs under 28 U.S.C. § 1920 pursuant to the EAJA.

18. Also under the EAJA and unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys to the prevailing party in any civil action brought by the United States. The United States is liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award. 28 U.S.C. § 2412(b).

19. In eminent domain proceedings under Kansas law, attorney fees and litigation expenses other than statutory court costs are not chargeable as costs against the defeated party in the absence of a clear statutory provision. *Schwartz v. Western Power & Gas Co., Inc.,* 208 Kan. 844, 494 P.2d 1113 (1972).

20. Kansas statute allows the discretionary award of attorney fees to the landowners only where the condemnor appeals the award of the court appointed appraisers and the jury returns a verdict for the landowners in an amount greater than the amount of the award. KSA 26–509; *see In re Central Kansas Electric Coop., Inc.,* 224 Kan. 308, 582 P.2d 228 (1978); *City of Wichita v. Chapman,* 214 Kan. 575, 521 P.2d 589 (1974).

21. The defendant landowners are not entitled to a discretionary award of attorney fees and expenses pursuant to the EAJA.

22. Pursuant to the EAJA, an award of attorney fees and expenses to the prevailing party is mandated unless the position of the United States was substantially justified. 28 U.S.C. § 2412(d)(1)(A).

23. For the purpose of a mandatory award of attorney fees and expenses against the United States in an eminent domain proceeding, a "prevailing party" means:

> a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

28 U.S.C. § 2412(d)(2)(H).

24. The highest valuation of the property given on behalf of the government at trial was $5,800. The highest valuation of the property given on behalf of the landowners at trial was $174,132.25 ($144,200 for the value of the fee surface estate using a 67 year useful life and a 3% discount rate + $29,932.25 for the value of the oil and gas in place).

25. The court reserves the attorney fee issue because the court does not have the

figure for the amount of the final judgment, exclusive of interest, before it.

26. The court appointed guardian ad litem is entitled to a reasonable fee for his services in this action, to be set by the court and taxed as costs. The guardian shall submit a bill of costs containing his itemized request for fees pursuant to the provisions of D.Kan.Rule 219(a).

## MOTION TO STAY PAYMENT

██ Also pending before the court is the defendants' motion to stay payment of the sum of $5,990 for lease bonuses or rentals on Tract 207. Doc. 68. This motion is in response to the government's notice of decision by the Bureau of Land Management. Doc. 67. The Bureau of Land Management (BLM) has rescinded Oil and Gas Lease 75355 in part and has authorized the refund of $5,990 paid on Tract 207 by the lessee Thomas H. Connelly. Connelly is not a party to this action. The BLM took this action after the Corps of Engineers advised that the United States did not have title to Tract 207. Since this lease was erroneously issued, the BLM has rescinded it. *See* Attachment to Doc. 67.

Defendants request that the court order the sum of $5,990 be paid into court pending further order. Defendants apparently seek the amount of the lease rentals received by the United States, plus interest. The government opposes the defendants' motion, arguing that the issue of lease payments of Tract 207 is not contained in the initial Pretrial Order entered by Judge Templar or the Final Pretrial Order entered the day of trial.

The court finds that defendants' motion should be denied. Since the lessee is not a party to this action, the court cannot make any orders which would interfere with his rights. The lease involving Tract 207 was erroneously issued since the United States lacked title to the land. Accordingly, the rentals paid by the lessee under this lease should be returned to the lessee. The court would further comment that in view of the court's determination of the lease rental value for the minerals, the defendant landowners are in effect receiving as a part of their award from the United States the rental value of Tract 207 for a ten year period. Finally, the court is aware of no authority allowing it to interfere with the decision of the BLM in this matter.

IT IS BY THE COURT THEREFORE ORDERED the government compute the amount of the award and the interest due and provide the court with a journal entry of judgment within ten (10) days from the date of this order.

IT IS FURTHER ORDERED that the defendants' motion to stay payment (Doc. 68) is hereby denied.